FILED
United States Court of Appeals
Tenth Circuit

July 20, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

SKY HARBOR AIR SERVICE, INC., a
Wyoming corporation; H. PAUL
MARTIN,

          Plaintiffs - Appellants,

v.

SHELLY REAMS, SCOTT
HINDERMAN, WILLIAM L.
HICKMAN, KEVIN PAINTER, and
JAMES JAGUSCH, individually and in
their official capacities; DAVE HARING,
individually and in his official capacity as
Cheyenne Regional Airport Manager;
GREAT LAKES AVIATION, LTD.,
d/b/a Great Lakes Airlines; CHEYENNE
REGIONAL AIRPORT BOARD,

          Defendants - Appellees.

Nos. 11-8004, 11-8025, 11-8062
(D.C. No. 2:08-CV-00150-WFD)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **HOLLOWAY**, and **MATHESON**, Circuit Judges.

---

      [*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

In 2008, Sky Harbor Air Service, Inc., ("Sky Harbor") and its owner, H. Paul Martin, asserted more than a dozen claims against various defendants in the U.S. District Court for the District of Wyoming. On summary judgment, the district court dismissed all of their claims. Sky Harbor and Mr. Martin also were held liable on a breach-of-contract counterclaim and ordered to pay attorney fees.

In the three appeals consolidated before us, Sky Harbor challenges rulings in favor of defendants Shelly Reams, the Cheyenne Regional Airport Board, and Great Lakes Aviation (collectively the "Defendants"). Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm the district court's grant of summary judgment to the Defendants but remand for a recalculation of the attorney fees awarded to Ms. Reams.

## I. BACKGROUND

### A. *Factual History*

Sky Harbor and Mr. Martin (collectively "Sky Harbor") accuse the Defendants of forcing them into financial ruin. Sky Harbor's allegations are rooted primarily in two events: (1) the State of Wyoming's decision to stop using Sky Harbor's services at the Cheyenne Regional Airport, and (2) Sky Harbor's lease negotiations with the Cheyenne Regional Airport Board (the "Board").

#### 1. *Sky Harbor's Services for the State*

Sky Harbor was a fixed-base operator ("FBO") at the Cheyenne Regional Airport. As an FBO, Sky Harbor provided ground support services, including fueling, tie-down services, and aircraft maintenance for general aviation customers. Between 1988 and

2005, Sky Harbor had an annual lease arrangement with the State of Wyoming Aeronautics Division ("Aeronautics") to house the State's aircraft and to provide other services at the airport.

In March 2005, a Sky Harbor employee damaged an elevator on a state jet. Sky Harbor's chief mechanic determined that the damage was within limits for safe flight and that it did not require immediate repair or entry in the aircraft's logbook. He confirmed his assessment with the aircraft's manufacturer.

The next day, Mr. Martin reported the incident to Sky Harbor's insurance provider, and Sky Harbor's chief mechanic reported the incident to the Federal Aviation Administration ("FAA"). The mechanic also applied a sealant or adhesive to temporarily fix the elevator damage.

Shelly Reams, the head of Aeronautics, did not learn of the aircraft damage until weeks later—on April 21, 2005—after state pilots noticed the damage. On May 13, 2005, Ms. Reams contacted an FAA official, who agreed to investigate the incident.

On May 19, 2005, the Wyoming Department of Transportation ("WyDOT") Commission met in an executive, closed-door session. According to minutes from the meeting, Ms. Reams informed the Commission that Sky Harbor had damaged the elevator on a state aircraft, that Sky Harbor did not report the damage to Aeronautics, and that a cover-up of the incident was suspected. The WyDOT director stated he would request a criminal investigation.

The WyDOT Commission then voted to end Aeronautics' lease with Sky Harbor.

On May 24, 2005, Ms. Reams delivered a letter to Mr. Martin informing him that Aeronautics would not renew its annual lease with Sky Harbor to house state aircraft and to provide other services.

During the transition away from Sky Harbor's services, Ms. Reams sought assistance from Great Lakes Aviation ("GLA") to temporarily provide emergency fuel and minor maintenance for state aircraft. Ms. Reams also recommended to the WyDOT Commission that the State build its own hangar facility, and the State eventually contracted with the Board to do so.

On June 2, 2005, an FAA official told Ms. Reams that recordkeeping of aircraft repairs had not been Sky Harbor's responsibility, but rather the responsibility of the State's pilots and mechanics. The FAA official nevertheless agreed to open an investigation into the damage to the state aircraft. However, Ms. Reams left the issue to law enforcement and did not provide the FAA with any documentation on the incident.

At some point, the Federal Bureau of Investigation and the Department of Homeland Security began an investigation of the aircraft damage.[1] The FBI questioned Ms. Reams about the damage to the jet, the sequence of events surrounding the incident, and the quality of Sky Harbor's services.

Media then began reporting about an investigation into Sky Harbor's role in damaging the state aircraft. Five articles quoted Ms. Reams as saying, in regard to Sky

---

[1] The district court noted that it is unclear from the record why the FBI and DHS became involved.

Harbor: "There are possible serious problems that are under investigation. But it would be inappropriate to comment at this time." Aple. Appx. (11-8004), Vol. IV, at 704.

## 2. *Sky Harbor's Leases with the Board*

In 2004—before the aircraft damage—Sky Harbor negotiated with the Board to take over the lease of a hangar at the airport. This hangar, known as the "Paint Shop," had been operated as a facility for painting aircraft. Sky Harbor requested to use the Paint Shop for purposes other than painting, including general aircraft maintenance. The Board refused Sky Harbor's proposed change in use.

Sky Harbor nonetheless assumed the Paint Shop lease—in addition to its lease with the Board to provide FBO services at the airport—in December 2004. Sky Harbor's rent was $9,500 per month.

Sky Harbor eventually became significantly delinquent in its payments to the Board on the Paint Shop and FBO leases. To allow Sky Harbor to continue its airport services, Sky Harbor and the Board engaged in lease amendment negotiations and reached an agreement on October 23, 2006. Under this agreement, Sky Harbor's satisfaction of $114,000 in unpaid Paint Shop rent would culminate with a payment of $104,000 on April 30, 2007.

Sky Harbor did not fulfill its obligation to pay the Paint Shop's past-due rent, and the Board terminated the Paint Shop lease in December 2007. As a result, in March 2008, Sky Harbor and the Board submitted a stipulated motion in Laramie County Circuit Court agreeing that Sky Harbor would vacate the Paint Shop. The court entered an order

approving the parties' stipulated motion.

After Sky Harbor left the Paint Shop, the Board sought a new lessee. GLA submitted a lease proposal that would have required the Board to change the use of the building from aircraft painting to general aviation maintenance.[2] GLA was not awarded the Paint Shop lease and has never occupied the building.[3]

## B. *Procedural History*

### 1. *Preliminary Injunction*

In June 2008, Sky Harbor filed a verified complaint against the Defendants and moved for a preliminary injunction to prevent GLA from taking over the Paint Shop lease. Sky Harbor argued that if the Board allowed GLA to occupy the Paint Shop and to use the facility for a purpose other than aircraft painting, such disparate treatment would violate the Equal Protection Clause of the Fourteenth Amendment.

On November 10, 2008, the district court denied Sky Harbor's motion for a preliminary injunction.

---

[2]Sky Harbor made essentially this same request when it pursued the Paint Shop lease in 2004. The Board denied that request.

[3]It is unclear whether the Board approved GLA's proposal. GLA states that it was not selected as a Paint Shop tenant because its bid lacked the "necessary information that was requested by the Board." Aple. GLA/Reams Br. (11-8004) at 14. The Board asserts that "GLA's bid ultimately became compliant with bid specifications" but that Sky Harbor's lawsuit deterred GLA from taking over the Paint Shop lease. Aple. Board Br. (11-8004) at 22. It is undisputed, however, that GLA has never leased the Paint Shop or occupied it.

## 2. *Verified Amended Complaint*

On July 1, 2009, Sky Harbor filed a verified amended complaint alleging the following: The Defendants falsely accused Sky Harbor of criminal activity in connection with damage to the state aircraft. The Defendants also devised a plan to cause Aeronautics to stop using Sky Harbor's services, which forced Sky Harbor to become delinquent on its lease payments to the Board and publicly discredited the company. The Defendants aimed to enable the Board to evict Sky Harbor as the airport's sole FBO, take over its business, pave the way for the State to obtain funding for its own hangar and fueling facility, and give GLA the opportunity to expand its operations into the Paint Shop.

Sky Harbor further alleged that Ms. Reams had a motive to oust Sky Harbor as the airport's FBO and to build a state-owned hangar and fueling facility. In Sky Harbor's view, Ms. Reams sought this outcome so that Aeronautics would become a department separate from WyDOT and so that Ms. Reams would receive a promotion and salary increase.

Sky Harbor asserted 14 claims. They included claims for (1) extortion,[4] wire and mail fraud, bank fraud, and conspiracy under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968; (2) government defamation, deprivation of free speech, disparate treatment in violation of the Equal Protection

---

[4]Sky Harbor's extortion claim under RICO incorporates a claim for extortion/blackmail under Wyoming law.

Clause, and conspiracy under 42 U.S.C. § 1983; and (3) breach of contract, breach of implied contract, promissory estoppel, and equitable estoppel under Wyoming law.

In response, the Board asserted a counterclaim under Wyoming law for breach of the Paint Shop lease.

### 3. *Summary Judgment Orders*

#### a. *Liability Order*

On August 21, 2009, the Defendants moved for summary judgment on all of Sky Harbor's claims. The district court granted their motions. The court's 60-page order also granted the Board summary judgment on its counterclaim for Sky Harbor's breach of the Paint Shop lease. But the court declined to grant damages to the Board due to remaining issues of material fact.

#### b. *Damages Order*

On July 19, 2010, the Board filed a renewed summary judgment motion on the issue of damages for breach of the Paint Shop lease. Sky Harbor responded that the Paint Shop lease was illegal and unenforceable.

On October 26, 2010, the district court granted the Board's motion and awarded $429,809.20 in damages, attorney fees, and costs. The court characterized the posture of the Board's motion as "somewhat unusual because Sky Harbor makes no discernible effort to set forth specific facts showing a genuine, triable issue of fact regarding damages." Aple. Appx. (11-8004), Vol. IV, at 894. Instead, the court noted, Sky Harbor "oppose[d] summary judgment by arguing—for the first time—that *no* damages exist

-8-

because the lease at issue is illegal and unenforceable as a matter of law." *Id.*

The district court viewed Sky Harbor's argument as a tardy attempt to assert an affirmative defense to liability. The court concluded that "Sky Harbor litigated and lost the issue of liability and is precluded from re-litigating that issue on an alternate theory available when the Court granted summary judgment." *Id.* at 897. The court entered judgment for the Defendants on December 17, 2010.

### 4. *Rule 59(e) Order*

On January 17, 2011, Sky Harbor moved to alter or amend the judgment under Rule 59(e) of the Federal Rules of Civil Procedure. It argued that newly discovered e-mail correspondence and documents obtained through a Freedom of Information Act ("FOIA") request confirmed that the Paint Shop lease was illegal. In response, the Defendants moved to strike Sky Harbor's motion on two grounds: (1) the motion was untimely, and (2) Mr. Martin, a non-attorney, had signed the motion for Sky Harbor in violation of Rule 11(a) of the Federal Rules of Civil Procedure.

The district court granted the Defendants' motion to strike Sky Harbor's Rule 59(e) motion.

### 5. *Order Granting Attorney Fees to Ms. Reams*

In November 2010, Ms. Reams moved for attorney fees under 42 U.S.C. § 1988(b). She also separately moved for sanctions against Sky Harbor under Rule 11 of the Federal Rules of Civil Procedure.

On July 18, 2011, the district court denied Ms. Reams's motion for sanctions but

granted her motion for fees under § 1988(b). The court explained that an award of fees was appropriate because Sky Harbor's § 1983 and RICO claims were "vexatious, frivolous, and brought to harass or embarrass [Ms.] Reams." Aple. Appx. (11-8004), Vol. IV, at 930. It awarded her $63,476.50.

## II. DISCUSSION

Sky Harbor challenges the district court's orders (1) granting summary judgment to the Defendants on the issues of liability and damages, (2) striking Sky Harbor's Rule 59(e) motion, and (3) awarding attorney fees to Ms. Reams. We discuss Sky Harbor's challenges to these rulings below.[5] But as a threshold matter, we address the Defendants' contention that Sky Harbor's appellate briefs are deficient.

### A. *Adequacy of Sky Harbor's Appellate Briefs*

The Defendants argue that Sky Harbor's appellate briefing is inadequate under Rule 28 of the Federal Rules of Appellate Procedure. They ask us to dismiss Sky Harbor's consolidated appeals entirely or to decline to address certain arguments.

Rule 28(a)(9)(A) of the Federal Rules of Appellate Procedure "requires the argument section [of an appellant's brief] to contain appellant's contentions and the

---

[5]Sky Harbor challenges the district court's orders in three appeals. Appeal no. 11-8004 primarily concerns the district court's summary judgment orders, but also addresses the court's Rule 59(e) and attorney fees orders. Appeal no. 11-8025 challenges the district court's Rule 59(e) order. Appeal no. 11-8062 challenges the order awarding Ms. Reams attorney fees. Each appeal contends the Paint Shop lease is an illegal contract.

Although Sky Harbor's briefing in 11-8004 addresses issues raised in 11-8025 and 11-8062, our discussion is organized by addressing the district court's individual orders.

reasons for them, with citations to the authorities and parts of the record on which the appellant relies." *MacArthur v. San Juan Cnty.*, 495 F.3d 1157, 1160 (10th Cir. 2007) (quotations omitted). "[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief." *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007). It is also "indisputably within our power as a court to dismiss an appeal when the appellant has failed to abide by the rules of appellate procedure." *MacArthur*, 495 F.3d at 1161.

We decline to dismiss Sky Harbor's appeals entirely, but we agree with the Defendants that some of Sky Harbor's arguments on appeal do not satisfy Rule 28(a)(9)(A). Sky Harbor has waived these arguments by making mere assertions, failing to challenge the district court's reasoning, not citing any record support, and/or failing to raise the argument in its opening brief. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005) ("Under Rule 28, . . . a brief must contain . . . more than a generalized assertion of error, with citations to supporting authority." (quotations omitted)); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived . . . .").

Accordingly, we conclude that Sky Harbor has deficiently briefed the following arguments under Rule 28 and thus reject them: (1) the district court erred in dismissing

-11-

Sky Harbor's "class of one" equal protection claim, *see* Aplt. Br. (11-8004) at 52-55;[6] (2)

a "Stipulated Agreement Precludes Enforcement," *id.* at 66;[7] (3) the Board breached first,

*id.*;[8] (4) "Sky Harbor's Contract Defenses Are Not Barred," *id.* at 67;[9] and (5) "Personal

Liability Prohibited."[10]

---

[6]Although Sky Harbor spends multiple pages addressing the class-of-one equal protection issue, its discussion contains no record citations and has only a single sentence of analysis. *See* Aplt. Br. (11-8004) at 55. This sentence is an unclear assertion and does not challenge the district court's reasoning.

Moreover, Sky Harbor has not demonstrated how it is "similarly situated in every material respect" with GLA or why the Defendants' actions were "wholly unrelated to any legitimate state activity." *See Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011) (quotations omitted). Nor has it offered "concrete evidence of a campaign of official harassment directed against [it] out of sheer malice." *Jennings v. City of Stillwater*, 383 F.3d 1199, 1211 (10th Cir. 2004) (quotations omitted). Each is a required element of a class-of-one equal protection claim. Accordingly, Sky Harbor's claim cannot succeed.

[7]This argument ostensibly refers to the parties' stipulated motion in Laramie County Circuit Court for Sky Harbor to vacate the Paint Shop. Sky Harbor's briefing on this issue consists of a single sentence with no analysis or development.

[8]Sky Harbor's briefing of this argument contains no record citation supporting its view that the Board breached first or an indication of where this issue was preserved.

[9]Sky Harbor does not explain which "contract defenses" the district court barred. It is unclear whether this argument concerns Sky Harbor's state law *contract claims*, which the district court dismissed as time-barred under Wyoming law, or Sky Harbor's *contract defenses* to the Board's counterclaim, which the district court denied on the merits. We will not develop Sky Harbor's argument for it.

[10]Sky Harbor argues in four sentences that the district court erred in holding Mr. Martin personally liable for breach of the Paint Shop lease. Its argument contains no record citation and no legal support.

Sky Harbor's only contention is that Mr. Martin is shielded from liability because he signed the contract assigning the Paint Shop lease to Sky Harbor "as [a] corporate

Continued . . .

-12-

In addition, Sky Harbor has not challenged the district court's dismissal of its (1) RICO conspiracy claim, (2) § 1983 claims for deprivation of free speech and conspiracy, and (3) state-law contract claims. Because Sky Harbor has not addressed these claims on appeal, any such challenges are waived and we do not address them.

We now turn to the arguments that Sky Harbor has, at least arguably, adequately presented for our review.

**B. *The District Court's Summary Judgment Orders***

Sky Harbor challenges the district court's two summary judgment orders. In the first order, the court dismissed all of Sky Harbor's claims and held Sky Harbor liable on the Board's counterclaim for breaching the Paint Shop lease. In the second order, the district court granted damages and attorney fees to the Board for Sky Harbor's breach of the Paint Shop lease.

On appeal, Sky Harbor primarily argues that the Paint Shop lease is an illegal contract and the district court thereby erred in enforcing it. In addition, Sky Harbor argues that the district court erred in dismissing some of Sky Harbor's § 1983 and RICO

---

officer." Aplt. Br. (11-8004) at 68. Sky Harbor has not identified where it preserved this argument in the district court—we see no mention of it in the record—and it ignores the language of the assignment contract. Under the contract, all references in the Paint Shop lease to Heli-Support's owner would be replaced with "Paul Martin." Aplt. Appx. (11-8004), Vol. 1, at 93. And under the Paint Shop lease, Heli-Support's owner "personally guaranteed by the execution of a Guarantee Agreement" the performance of the lease's terms. *Id.* at 110. Without adequate briefing, we cannot reverse the district court's determination that Mr. Martin is personally liable under the terms of the assignment contract and Paint Shop lease.

claims against the Defendants.

"This court reviews de novo a district court's entry of summary judgment, viewing the facts in the light most favorable to the nonmoving party." *Rezaq v. Nalley*, 677 F.3d 1001, 1010 (10th Cir. 2012). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under this standard, we affirm the district court's orders granting summary judgment to the Defendants. We begin by addressing Sky Harbor's assertion that the Paint Shop lease is an illegal contract and then address the district court's dismissal of Sky Harbor's § 1983 and RICO claims.

## 1. *Illegality of the Paint Shop Lease*

Sky Harbor argues that the Paint Shop lease is an illegal, unenforceable contract, and thus the district court erred in holding Sky Harbor liable for breaching it.[11] Sky Harbor asks us to address the merits of its illegality theory and to declare the Paint Shop lease unenforceable.

_____

[11]In sum, Sky Harbor contends that the lease is illegal because the Board violated an Economic Development Administration ("EDA") grant when it (1) rented the Paint Shop for $9,500 per month; (2) failed to get the EDA's approval of Sky Harbor's lease and to notify the EDA that Sky Harbor was the new Paint Shop tenant; (3) used the Paint Shop to generate a commercial profit; (4) mortgaged the property to refinance indebtedness; and (5) considered allowing GLA to occupy the Paint Shop and to use it for activities unrelated to aircraft painting. Sky Harbor also asserts that the Paint Shop lease is an illegal contract because the Board violated federal statutes and regulations, as well as multiple FAA sponsor assurances.

The district court rejected Sky Harbor's theory on procedural grounds. The court explained that illegality of a contract is an affirmative defense that Sky Harbor had failed to plead in its answer to the Board's counterclaim. The court recognized that Sky Harbor could have formally amended its answer or constructively amended it by raising the affirmative defense in a timely fashion. But Sky Harbor waited to raise the illegality defense until after the district court ruled that Sky Harbor was liable for breaching the Paint Shop lease. The court therefore declined to constructively amend Sky Harbor's answer to the Board's counterclaim.

We review this procedural ruling for abuse of discretion. *See Ahmad v. Furlong*, 435 F.3d 1196, 1202 (10th Cir. 2006) (reviewing for abuse of discretion a court's ruling on whether to allow a constructive amendment at the summary judgment stage). "A court abuses its discretion if it refuses leave [to amend a pleading] without expressing any justification, [but] if the denial rests on articulated reasons . . . the district court['s] decision shall stand." *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir. 1992).

The illegality of a contract is a defense that "a party must affirmatively state" in a pleading. *See* Fed. R. Civ. P. 8(c)(1); *see also Int'l Bhd. of Elec. Workers, Local Union Nos. 12, 111, 113, 969 v. Prof'l Hole Drilling, Inc.*, 574 F.2d 497, 500 (10th Cir. 1978). The "best procedure is to plead an affirmative defense in an answer or amended answer." *Ahmad*, 435 F.3d at 1202. But if a party has not formally moved to amend its answer under Rule 15(a) of the Federal Rules of Civil Procedure, a district court may allow the

party to "'constructively' amend [its] answer," such as by raising an affirmative defense in a motion for summary judgment. *Id.*

Courts should consider several factors in determining whether to allow a party's constructive amendment. A primary consideration is whether the opposing party will suffer prejudice. *Id.* In addition, denial of a proposed amendment is appropriate if the amendment is an attempt to make a pleading a "moving target" or "to salvage a lost case by untimely suggestion of new theories." *See Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006) (quotations omitted). "[A] motion to amend may also be denied on grounds such as undue delay, bad faith or dilatory motive." *Ahmad*, 435 F.3d at 1202 (quotations omitted).

The district court's rejection of Sky Harbor's tardy affirmative defense was not an abuse of discretion. Sky Harbor was given the chance to litigate whether it was liable for breach of the Paint Shop lease, and it lost on that issue. In rejecting Sky Harbor's illegality defense, the district court was concerned with "the principles of notice and fairness embodied in the pleading rules" and with preventing the "exploit[ation of] the liberal amendment policy of Rule 15(a)(2) to the detriment of final judgments and the expeditious conclusion of litigation." Aple. Appx. (11-8004), Vol. IV, at 896. Its reasoning demonstrates a concern with the untimely suggestion of new theories and undue delay. Had the court allowed Sky Harbor to assert its late affirmative defense, the Defendants would have been forced "to re-litigate the dispute on new bases . . . and to incur new rounds of additional and costly discovery, . . . depriving [them] of the

-16-

meaningful value of obtaining summary judgment." *Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 774 (7th Cir. 1995). This would have been prejudicial to the Defendants. *See id.* The district court therefore articulated a valid basis for rejecting Sky Harbor's tardy attempt to constructively amend its answer.

Sky Harbor argues that the district court abused its discretion in various respects. First, Sky Harbor argues that the district court's analysis is at odds with our decision in *Ball Corp. v. Xidex Corp.*, 967 F.2d 1440 (10th Cir. 1992). In *Ball Corp.*, we held that a defendant did not waive an affirmative defense that was raised for the first time in the defendant's motion for partial summary judgment. *Id.* at 1443-44. We explained that the motion came three months before trial, which was sufficient notice to the plaintiff to allow for proper litigation of the issue. *Id.* at 1444.

*Ball Corp.* does not control here. Sky Harbor did not raise its affirmative defense until *after* the court's ruling on the issue of liability. Unlike the defendant in *Ball Corp.*, Sky Harbor had "litigated and lost the issue of liability." Aple. Appx. (11-8004), Vol. IV, at 897.

Second, Sky Harbor contends that a contract's illegality may be raised "at any stage of the proceedings." Aplt. Br. (11-8004) at 40. Although Sky Harbor's supporting authorities generally explain that courts will not enforce illegal contracts, they do not discuss when the assertion of such an affirmative defense may be made.[12] As previously

_____

[12]Sky Harbor does cite to *Williston on Contracts*, which states that "if the illegality

Continued . . .

discussed, a party responding to a complaint or counterclaim "must affirmatively state any . . . affirmative defense, including . . . illegality." Fed. R. Civ. P. 8(c)(1). Or the party may amend its answer, formally or constructively, in a timely fashion and with the court's leave. *See Ahmad*, 435 F.3d at 1202. Sky Harbor did neither.

Third, Sky Harbor argues that it did not raise the illegality defense earlier because the Board withheld evidence supporting the defense. Sky Harbor obtained the documents supporting its defense from a FOIA request. But Sky Harbor did not make its FOIA request until July 2, 2010—more than a month *after* the court's order holding Sky Harbor liable for breaching the Paint Shop lease. *See* Aplt. Appx. (11-8004), Vol. 3, Pt. 1, at 137. We will not reverse the district court's ruling based on publicly available documents that Sky Harbor did not pursue until after it lost on the liability issue.

Finally, Sky Harbor suggests that, after it raised the issue of illegality of the Paint Shop lease, the district court erred by not reconsidering its liability ruling under Rule 54(b) of the Federal Rules of Civil Procedure. On July 23, 2010, Sky Harbor submitted a Rule 54(b) motion. But this motion did not ask the court to reconsider the court's liability ruling. It requested that the court *enter final judgment* and *certify an appeal* of its liability ruling.

Sky Harbor's argument on appeal that the court should have reconsidered the

is serious enough, a court may raise it sua sponte to avoid becoming an instrument of injustice." 8 Richard A. Lord, Williston on Contracts § 19:12 (4th ed. 2012). Here, Sky Harbor raised the illegality issue, and the court declined to consider it due to its tardiness. The court's procedural ruling was not an abuse of discretion.

liability ruling under Rule 54(b) is therefore contrary to its motion under that rule seeking the entry of *final judgment*. The district court did not err by failing to *sua sponte* convert the motion into one for reconsideration when Sky Harbor sought the contrary outcome of final judgment and appeal.

* * *

The district court did not abuse its discretion when it rejected Sky Harbor's attempt to constructively amend its pleadings with a tardy affirmative defense. The court had decided the issue of liability, and its concerns about prejudice to the Defendants and undue delay were proper bases to reject Sky Harbor's untimely theory of illegality.

**2.  *Government Defamation Under § 1983***

Sky Harbor argues that the district court erred in dismissing its § 1983 claim for government defamation. As discussed below, we conclude that the court did not err.

**a.  *Substantive Background***

The Supreme Court recognized in *Paul v. Davis*, 424 U.S. 693 (1976), that government defamation resulting in an alteration in legal status may implicate a liberty interest under the Due Process Clause of the Fourteenth Amendment. *Id.* at 711-12. Known as the "stigma plus" standard, *Brown v. Montoya*, 662 F.3d 1152, 1167 (10th Cir. 2011), it requires a change in an individual's legal status *plus* the stigma suffered from the government defamation, *see Paul*, 424 U.S. at 711-12.

Thus, a plaintiff asserting a government defamation claim must satisfy two elements:

(1) the government made a statement about him or her that is sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she asserts is false, and (2) the plaintiff experienced some governmentally imposed burden that significantly altered his or her status as a matter of state law.

*Gwinn v. Awmiller*, 354 F.3d 1211, 1216 (10th Cir. 2004) (quotations omitted). Under the first element, the defamatory statement must be published. *See Jensen v. Redev. Agency of Sandy City*, 998 F.2d 1550, 1558 (10th Cir. 1993).

### b. *Procedural Background*

The district court rejected Sky Harbor's § 1983 government defamation claim for failure to meet the first element of the stigma plus standard. The court concluded that Sky Harbor had failed to demonstrate how Ms. Reams, the Board, or GLA made derogatory statements that were capable of injuring Sky Harbor's reputation and of being proved false. The court focused primarily on Ms. Reams's comments reflected in the WyDOT Commission meeting minutes and on her statements to the media.

The WyDOT Commission minutes indicate that Ms. Reams stated that Sky Harbor "never informed [Aeronautics] of the [state aircraft] damage . . . and a cover up is suspected." Aplt. Appx. (11-8004), Vol. 3, Pt. 1, at 160. The district court concluded that Ms. Reams's statements, as reflected in the minutes, did not "rise to the level of making criminal accusations," Aple. Appx. (11-8004), Vol. IV, at 704, and thus failed the first element of the stigma plus standard.

Five media articles also quoted Ms. Reams as stating that "[t]here are possible

serious problems that are under investigation [regarding Sky Harbor]. But it would be inappropriate to comment at this time." *Id.* The district court concluded that Ms. Reams's "statement to the press that an investigation was under way was true" and thus incapable of being proved false. *Id.* at 705.

Finally, the court explained that Sky Harbor provided no evidence that the Board or GLA made or repeated any defamatory statements.

### c. *Sky Harbor's Government Defamation Claim*

On appeal, Sky Harbor asserts that Ms. Reams "proffered bizarre fabrications of criminal wrongdoing and admissions in secret state meetings and in executive session to transfer Sky Harbor's property rights to [the Board] and GLA." Aplt. Br. (11-8004) at 30-31. Sky Harbor also complained about the statements Ms. Reams made to the media.[13] We therefore separate Ms. Reams's alleged defamatory statements into those (1) reflected in the WyDOT Commission meeting minutes, and (2) reported by the media.

### i. *WyDOT Commission Meeting Minutes*

The district court concluded that Ms. Reams's statements to the WyDOT Commission did not rise to the level of criminal accusations and thus did not damage Sky Harbor's reputation. We affirm the district court's ruling that Ms. Reams's statements to the WyDOT Commission cannot support a government defamation claim, but we do so on a different basis. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir.

---

[13]Sky Harbor does not discuss the media statements in its briefing. We address them only because they were part of Sky Harbor's overall government defamation claim.

2011).

Ms. Reams's statements to the WyDOT Commission cannot support a government defamation claim because they were not published. We have explained that "intragovernment dissemination [of a defamatory statement], by itself, falls short of the Supreme Court's notion of publication." *Asbill v. Hous. Auth. of Choctaw Nation of Okla.*, 726 F.2d 1499, 1503 (10th Cir. 1984); *see also Six v. Henry*, 42 F.3d 582, 586 (10th Cir. 1994) (stating that "even if . . . [the defendant] had made a negative statement to other . . . government office personnel as to any plaintiff," no publication occurred); *Lollis v. City of Eufaula*, 249 F. Appx. 20, 25 (10th Cir. 2007) (unpublished) ("There is no evidence that the Defendants caused the . . . statements or the reprimand to be published outside the Police Department or City Council, as is required to establish his claim."). Ms. Reams's statements were made at a closed-door, executive session of the WyDOT Commission. The minutes of this meeting were not publicly available; indeed, Sky Harbor could not obtain the minutes until a magistrate judge ordered their production on January 29, 2010. Any dissemination of Ms. Reams's statements to the WyDOT Commission was thus intra-governmental and insufficient to establish publication.

Because Sky Harbor has not offered evidence of the publication of Ms. Reams's statements outside of the WyDOT Commission's closed doors, its § 1983 government defamation claim cannot succeed.

### ii. Media Reports

Ms. Reams's statements to the media also cannot support a § 1983 government

defamation claim.

Articles quoted Ms. Reams as saying that "[t]here are possible serious problems that are under investigation [regarding Sky Harbor]." Aple. Appx. (11-8004), Vol. IV, at 704. Although Sky Harbor takes issue with this statement, it admits that the FBI engaged in a yearlong investigation of the damage to the state aircraft. *See* Aplt. Br. (11-8004) at 31. We have explained that "the mere statement that there is an investigation does not violate a liberty interest when there actually is an ongoing investigation." *See Primas v. City of Okla. City*, 958 F.2d 1506, 1510 (10th Cir. 1992).

We agree with the district court that Ms. Reams's statements to the media were true and cannot support a government defamation claim.

* * *

Ms. Reams's statements to the WyDOT Commission were not published, and her statements regarding an ongoing investigation were true. We therefore affirm the district court's dismissal of Sky Harbor's § 1983 claim for government defamation.

**3.** *Sky Harbor's RICO Claims*

Sky Harbor appeals the district court's dismissal of its claims under the RICO statute. For the reasons discussed below, the district court did not err in granting summary judgment on these claims.

**a.** *Substantive Background*

"RICO provides a cause of action for those injured in business or property by reason of prohibited racketeering activities." *Bixler v. Foster*, 596 F.3d 751, 756 (10th

Cir. 2010).  Under 18 U.S.C. § 1962(c), it is unlawful "for any person employed by or associated with any enterprise . . . to conduct or participate . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  A § 1962(c) claim thus has four elements:  "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Bixler*, 596 F.3d at 761 (quotations omitted).

The fourth element—racketeering activity—"is defined . . . as any 'act which is indictable' under federal law," *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006) (quoting 18 U.S.C. § 1961(1)(B)), and includes extortion, mail fraud, wire fraud, and bank fraud.  An act of extortion under state law punishable by more than one year in prison also is a racketeering activity.  *See* 18 U.S.C. § 1961(1)(A).  "These underlying acts are referred to as *predicate acts*, because they form the basis for liability under RICO."  *Tal*, 453 F.3d at 1261 (emphasis added) (quotations omitted).  A plaintiff must prove that a defendant engaged in at least two predicate acts to satisfy the "pattern" element of a RICO claim.  *See id.* at 1267.

### b.  *Sky Harbor's RICO Claims*

On appeal, Sky Harbor argues that the district court erred in dismissing its RICO claims for the predicate acts of (1) extortion under federal law and (2) blackmail under

Wyoming law.[14]  We affirm the district court's rejection of each of these predicate acts.

### i. *Extortion*

"The term 'extortion' means the obtaining of property from another, *with his consent*, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."  18 U.S.C. § 1951(b)(2) (emphasis added); *see also id.* § 1961(1) (stating that § 1951 extortion is a "racketeering activity" under RICO).  Because extortion requires consent, "[c]hoice on the part of the victim is a common theme in all extortion cases."  *United States v. Zhou*, 428 F.3d 361, 371 (2d Cir. 2005).  "[T]he victim's consent—however forced—to the transfer of the property" is a required element of extortion.  *Id.* at 371-72.

The district court concluded that Sky Harbor had failed to establish extortion because Mr. Martin conceded that he did not consent to the Defendants' alleged taking of

---

[14]Sky Harbor alleged in its complaint that the Defendants violated RICO by engaging in the predicate acts of extortion, wire and mail fraud, bank fraud, conspiracy, and blackmail.  On appeal, Sky Harbor does not raise its conspiracy claim and only briefly mentions its claims for wire and mail fraud.  It concedes its wire fraud claim, *see* Aplt. Br. (11-8004) at 58 n.17, and its argument regarding mail fraud is inadequately briefed.  Sky Harbor provides no analysis regarding this claim and does not dispute the district court's conclusion that Sky Harbor "offered no evidence that Defendants actually mailed . . . anything that could be arguably construed to be in furtherance of a scheme to defraud."  Aple. Appx. (11-8004), Vol. IV, at 689.  Accordingly, we do not address these claims.

We also do not address Sky Harbor's arguments regarding bank fraud because, as the district court noted, Sky Harbor "failed to respond in any fashion" to the Defendants' motions for summary judgment on this predicate act.  Although Sky Harbor raised its bank fraud claim on appeal, it failed to pursue it in district court.  Its bank fraud arguments on appeal are therefore waived.  *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127 (10th Cir. 2011).

Sky Harbor's "business interests and rights to compete." Aple. Appx. (11-8004), Vol. IV, at 677. On appeal, Sky Harbor acknowledges that consent is a required element of extortion but argues that "[c]onsent of any sort, express, implied, or totally passive is sufficient." Aplt. Br. (11-8004) at 59. It argues that "consent exists where [a] defendant causes some businesses to refuse to deal with the victim where a property right to contract freely exists in the victim." *Id.* In other words, Sky Harbor argues that consent is present in this case because the Defendants allegedly caused Aeronautics not to renew its lease with Sky Harbor for aircraft housing and other services.

We reject Sky Harbor's position because it ignores the element of extortion that requires the victim to have some choice in parting with property and that the victim consent to do so as a result of wrongful inducement. Sky Harbor's extortion claim is based on Aeronautics' decision to stop using Sky Harbor's services—a decision in which Sky Harbor had no choice.

Although Sky Harbor alleges that Ms. Reams falsely accused it of covering up the aircraft damage, resulting in WyDOT's and Aeronautics' decision to stop using Sky Harbor's services, Sky Harbor never contends that it consented to give up its lease with Aeronautics. Mr. Martin testified at his deposition that he believed Ms. Reams extorted Sky Harbor's "legitimate business interests." Aple. Appx. (11-8004), Vol. I, at 98. When asked whether Ms. Reams had Mr. Martin's permission to take these business interests, he responded, "No, she did not." *Id.*

It is undisputed that Sky Harbor did not choose or consent to give up its business

-26-

relationship with Aeronautics. The district court therefore correctly rejected Sky

Harbor's RICO claim based on the predicate act of extortion.

### ii. Blackmail

Under the RICO statute, a "racketeering activity" includes an act of extortion that

"is chargeable under State law and punishable by imprisonment for more than one year."

18 U.S.C. § 1961(1)(A). In Wyoming, blackmail "constitutes a single offense embracing

the separate crimes formerly known as blackmail and extortion," Wyo. Stat. Ann.

§ 6-2-402(e), and is a felony punishable by imprisonment up to 10 years, *id.*

§ 6-2-402(b). Under the blackmail statute,

> [a] person commits blackmail if, with the intent to obtain property of
> another or to compel action or inaction by any person against his will, the
> person . . . [a]ccuses or threatens to accuse a person of a crime . . . which
> would tend to degrade or disgrace the person or subject him to the ridicule
> or contempt of society.

*Id.* § 6-2-402(a)(ii).

But blackmail under Wyoming law "cannot qualify as a predicate offense for a

RICO suit unless it is capable of being generically classified as extortionate." *Wilkie v.*

*Robbins*, 551 U.S. 537, 567 (2007) (quotations omitted). "[G]eneric extortion is defined

as obtaining something of value from another *with his consent* induced by the wrongful

use of force, fear, or threats." *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 409

(2003) (emphasis added) (quotations omitted); *see also United States v. Nardello*, 393

U.S. 286, 290 (1969).

As discussed above, Sky Harbor did not consent to give up its business interests.

The WyDOT Commission and Aeronautics made that decision without Sky Harbor's input. The Defendants' conduct therefore does not fall within the generic definition of extortion and cannot serve as a predicate act to support a RICO claim.[15]

* * *

Sky Harbor has not established a predicate act under RICO, let alone the two predicate acts required to establish a "pattern" of racketeering activity. We therefore affirm the district court's grant of summary judgment to the Defendants on Sky Harbor's RICO claims.

## C. *The District Court's Rule 59(e) Order*

We now turn to Sky Harbor's challenges to the district court's order striking its motion under Rule 59(e) of the Federal Rules of Civil Procedure. "We review a district court's ruling on a [Rule] 59(e) motion under an abuse of discretion standard." *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997). We also review a court's grant of a motion to strike for abuse of discretion. *Mitchael v. Intracorp, Inc.*, 179 F.3d 847, 854 (10th Cir. 1999). "Under the abuse of discretion standard, a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower

---

[15]We also note that the Wyoming Supreme Court interpreted an earlier, similar version of the blackmail statute as requiring the "communication of a threat, as a threat, to the intended victim." *Otte v. State*, 563 P.2d 1361, 1365 (Wyo. 1977). We see no reason why the current statute would not contain that same requirement. Thus, Sky Harbor's allegation of blackmail fails for the additional reason that it offered no evidence that the Defendants communicated any threat to Sky Harbor to induce it to part with its business interests.

-28-

court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Phelps*, 122 F.3d at 1324.

As discussed below, we hold that the district court did not abuse its discretion because the Federal Rules of Civil Procedure allowed the court to strike Sky Harbor's motion.

## 1. *Procedural Background*

The district court entered judgment against Sky Harbor on December 17, 2010. Thirty-one days later, on January 17, 2011, Sky Harbor moved under Rule 59(e) to alter or amend the judgment, asserting that new evidence established that the Paint Shop lease was illegal and unenforceable. The Rule 59(e) motion was submitted on behalf of Sky Harbor—not Mr. Martin[16]—but contains the signature of "H. Paul Martin." The motion's certificate of service was signed by Sky Harbor's attorney at the time.

On February 2, 2011, the Defendants moved to strike the motion because Sky Harbor had filed it more than 28 days after the judgment. They also argued that Sky Harbor's motion should be stricken because Mr. Martin, a non-attorney, signed it.

Sky Harbor responded that the court should reject the Defendants' motion to strike on the merits or, in the alternative, convert Sky Harbor's Rule 59(e) motion into a motion

---

[16]Sky Harbor's and Mr. Martin's joint motions in district court often begin with the statement "Come now *the Plaintiffs*." *See, e.g.*, Aplt. Appx. (11-8004), Vol. 2, Tab 10, at 1 (emphasis added). In contrast, the Rule 59(e) motion is titled "*Sky Harbor's* Fed.R.Civ.P. 59(e) Motion to Alter or Amend Judgment" and begins by stating that "*Sky Harbor* respectfully submits this Motion." *Id.*, Vol. 3, Pt. 1, Tab 18, at 1 (emphases added).

under Rule 60(b), which does not have a 28-day filing deadline. Mr. Martin signed this response memorandum.

The district court granted the Defendants' motion to strike. It ruled that Sky Harbor's Rule 59(e) motion was untimely. In addition, the court declined to convert the motion into a Rule 60(b) motion because it would still be fatally flawed: it was signed by Mr. Martin, a non-attorney. The court explained that Sky Harbor had "ample time to correct [its] omissions and . . . failed to do so." Aplt. Appx. (11-8004), Vol. 3, Pt. 1, Tab. 21, at 4.

### 2. *Sky Harbor's Rule 59(e) Argument*

On appeal, Sky Harbor argues that the district court erred when it (1) concluded that the Rule 59(e) motion was untimely, and (2) declined to convert the motion into a Rule 60(b) motion. We conclude that neither ruling was an abuse of discretion.

#### a.  *Timeliness*

Under Rule 59(e), "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." A court may not extend this deadline. *See* Fed. R. Civ. P. 6(b)(2).

Sky Harbor does not dispute that it filed its Rule 59(e) motion beyond the 28-day period. It argues, however, that Rule 59(e) is not a jurisdictional rule and thus a party opposing a Rule 59(e) motion on timeliness grounds may forfeit its argument by objecting too late. Sky Harbor contends that the Defendants forfeited their timeliness objection because they did not move to strike the Rule 59(e) motion until more than 14

days after Sky Harbor filed it.  We reject Sky Harbor's argument for two reasons.

First, the 14-day time limit for responsive motions is not mandatory.  Although Sky Harbor has not identified the applicable timing rule, it appears to be Rule 7.1 of the local rules for the U.S. District Court for the District of Wyoming.  That rule states that failure to serve a response to a non-dispositive motion within 14 days of its service "*may be deemed by the [c]ourt *in its discretion* as a confession of the motion.*"  Wyo. L. R. 7.1(b)(1)(B) (emphases added).  Thus, the district court had discretion to consider the motion to strike, and its decision to grant the motion did not exceed the bounds of permissible choice.  *See Phelps*, 122 F.3d at 1324.

Second, even if Sky Harbor is correct that Rule 59(e)'s 28-day time limit is not jurisdictional,[17] it does not follow that the Defendants forfeited their timeliness objection. Ordinarily, a party does not forfeit an objection to the timeliness of a motion unless the court has ruled on the merits of the motion.  *See Eberhart v. United States*, 546 U.S. 12, 19 (2005) ("[W]here the Government failed to raise a defense of untimeliness until after the District Court had reached the merits, it forfeited that defense."); *Wilburn v.*

---

[17]In *Watson v. Ward*, 404 F.3d 1230 (10th Cir. 2005), we indicated that courts lack jurisdiction to consider untimely Rule 59(e) motions.  *Id.* at 1231.  We have not had the opportunity, however, to determine whether that conclusion is consistent with the Supreme Court's recent decisions differentiating between "jurisdictional" and "claims processing" rules.  *See Gonzalez v. Thaler*, 132 S. Ct. 641, 649 (2012); *Bowles v. Russell*, 551 U.S. 205, 212 (2007); *Eberhart v. United States*, 546 U.S. 12, 19 (2005); *Kontrick v. Ryan*, 540 U.S. 443, 456 (2004).  Because resolution of this issue is unnecessary to the outcome of this case, we do not decide whether Rule 59(e)'s 28-day time limit is a jurisdictional or claims-processing rule.

*Robinson*, 480 F.3d 1140, 1147 (D.C. Cir. 2007) ("A party indisputably forfeits a timeliness objection based on a claim-processing rule if he raises the issue after the court has issued a merits decision.").

The Defendants filed their motion to strike 16 days after Sky Harbor filed its Rule 59(e) motion. The district court had not addressed the Rule 59(e) motion's merits. The court therefore did not err in considering and granting the Defendants' motion to strike based on Rule 59(e)'s 28-day filing period. *See Wilburn*, 480 F.3d at 1146 ("[A] claim-processing rule is nonetheless mandatory and district courts must observe the clear limits of time prescriptions when they are properly invoked." (quotations omitted)).

**b. *Rule 60(b) Conversion***

Sky Harbor further argues that the district court should have converted the Rule 59(e) motion into a Rule 60(b) motion to avoid the 28-day time limit.

Rule 60(b) allows for relief from judgment in cases of "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1), or when there is "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial," *id.* 60(b)(2). In either case, a party may file a Rule 60(b) motion "within a reasonable time" after the judgment. *Id.* 60(c)(1).

"Whether a motion is construed as a Rule 59(e) or Rule 60(b) motion depends upon the time in which the motion is filed." *Allender v. Raytheon Aircraft Co.*, 439 F.3d 1236, 1242 (10th Cir. 2006). If a party files a Rule 59(e) motion beyond the rule's time limit, a court may construe the motion as falling under Rule 60(b). *Id.*

-32-

As with all written motions, however, a Rule 60(b) motion must satisfy Rule 11(a)'s mandate that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name." Fed. R. Civ. P. 11(a). If a represented party's filing is not signed by an attorney, the "court must strike [the] unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention." *Id.*

Although Rule 11(a) allows unrepresented individuals to sign filings personally, *id.*, corporations may not appear in federal court without representation. *See Tal*, 453 F.3d at 1254 ("It has been our long-standing rule that a corporation must be represented by an attorney to appear in federal court."). Thus, corporations, unlike pro se individuals, may not submit and sign court filings on their own behalf.

In denying Sky Harbor's request to convert its Rule 59(e) motion to a Rule 60(b) motion, the district court explained that Sky Harbor was required to be represented by an attorney to appear in federal court and that Rule 11(a) required that Sky Harbor's motion contain its attorney's signature. Mr. Martin, a non-attorney, signed the motion, which the court found to be deficient under Rule 11(a). It also explained that "Sky Harbor . . . had ample time to correct [the Rule 11(a) violation] and . . . failed to do so." Aplt. Appx. (11-8004), Vol. 3, Pt. 1, Tab 21, at 4.

On appeal, Sky Harbor argues that its attorney signed the motion's certificate of service and that the motion was submitted electronically using her online account. In its view, Rule 11(a) was satisfied because an attorney helped present the motion, was Sky

-33-

Harbor's retained counsel, and was ready to argue the motion in court.  Sky Harbor also contends that it should have been allowed to correct the signature issue and that it suffered serious prejudice when the district court granted the Defendants' motion to strike.

Sky Harbor's arguments do not directly confront Rule 11(a)'s signature requirement.  Although an attorney signed the Rule 59(e) motion's certificate of service, submitted the motion, and was ready to argue it, she failed to sign the Rule 59(e) motion itself, as required by our rules of procedure.

Sky Harbor also had sufficient notice of the signature deficiency.  On February 2, 2011, Sky Harbor learned from the Defendants' motion to strike that the Rule 59(e) motion did not comply with Rule 11(a).  Despite this notice of deficiency, Sky Harbor filed a response memorandum again signed by Mr. Martin.  Sky Harbor did not attempt to remedy the Rule 11(a) error before the district court's March 17, 2011 order granting the Defendants' motion to strike.[18]

We agree with the district court that Sky Harbor had ample opportunity to remedy the Rule 11(a) signature deficiency but failed to do so.  Because Sky Harbor did not promptly comply with Rule 11(a), the district court did not abuse its discretion when it denied Sky Harbor's request to convert the motion into a Rule 60(b) motion and granted

---

[18]In addition, on January 21, 2011, just four days after it submitted its Rule 59(e) motion in district court, we notified Sky Harbor in one of its appeals that, as a corporation, it could not appear in federal court without legal representation.

the Defendants' motion to strike.

**D.** *The District Court's Attorney Fees Order*

Finally, we turn to Sky Harbor's contention that the district court erred when it awarded Ms. Reams attorney fees under 42 U.S.C. § 1988(b). "A district court's award of attorney's fees [under § 1988(b)] will be upset on appeal only if it represents an abuse of discretion. Any legal analysis underlying the imposition of sanctions, however, is reviewed *de novo*." *Utah Women's Clinic, Inc. v. Leavitt*, 136 F.3d 707, 709 (10th Cir. 1998) (citation omitted). "A trial court has wide discretion [in awarding fees] when, but only when, it calls the game by the right rules." *Fox v. Vice*, 131 S. Ct. 2205, 2217 (2011).

As discussed below, the district court did not abuse its discretion in awarding fees to Ms. Reams for Sky Harbor's frivolous and vexatious § 1983 claims. However, the district court also awarded fees to Ms. Reams under § 1988(b) for the defense of Sky Harbor's RICO claims. Because § 1988(b) does not provide for the award of fees in an action to enforce the RICO statute, we conclude that the award of fees related to Sky Harbor's RICO claims was error.

**1.** *Substantive and Procedural Background*

Under 42 U.S.C. § 1988(b), a court may award attorney fees to the prevailing party in a civil rights action to enforce 42 U.S.C. § 1983. *See Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). A court may award fees to a prevailing defendant if the plaintiff's § 1983 civil rights claims are "frivolous, unreasonable, or without foundation." *Fox*, 131

S. Ct. at 2213 (quotations omitted); *see also Hensley*, 461 U.S. at 429 n.2 (noting that defendants are entitled to fees for § 1983 lawsuits that are "vexatious, frivolous, or brought to harass or embarrass the defendant"). "This is a difficult standard to meet, to the point that rarely will a case be sufficiently frivolous to justify imposing attorney fees on the plaintiff." *Mitchell v. City of Moore, Oklahoma*, 218 F.3d 1190, 1203 (10th Cir. 2000).

After prevailing on her summary judgment motion, Ms. Reams moved under § 1988(b) for $109,017 in attorney fees incurred in defending Sky Harbor's § 1983 and RICO claims. Ms. Reams also requested fees under Rule 11 of the Federal Rules of Civil Procedure, which permits the award of fees as a sanction against a party who pursues frivolous claims.

The district court granted Ms. Reams's motion for attorney fees under § 1988(b) but denied her request for sanctions under Rule 11. The court concluded that Ms. Reams was the prevailing party and that Sky Harbor's § 1983 and RICO claims against Ms. Reams were "vexatious, frivolous, and brought to harass or embarrass" her. Aple. Appx. (11-8004), Vol. IV, at 930.

Having found that an award of fees was appropriate, the court assessed whether Ms. Reams's calculation of attorney fees was reasonable. It noted that, although Sky Harbor contended that Ms. Reams was not entitled to attorney fees, Sky Harbor did not challenge her fee calculation of $109,017. The court made its own calculation and concluded that Ms. Reams was entitled to $48,476.50 in reasonable attorney fees, which

reflected "billing entries related to the claims brought pursuant to 42 U.S.C. § 1983 and the civil RICO statute, the depositions of [Ms.] Reams and [Mr.] Martin, and [the] preparation of [Ms.] Reams's motion for summary judgment." *Id.* at 937-38. The district court added $15,000 to the award because Ms. Reams prevailed on all claims and because she was successful "in keeping [Sky Harbor] from muckraking [her] character." *Id.* at 940. The total attorney fees award was $63,476.50.

### 2. *Sky Harbor's Attorney Fees Challenges*

Sky Harbor raises two challenges to the district court's award of attorney fees to Ms. Reams. First, it argues that its § 1983 claims against Ms. Reams were not frivolous or vexatious, and thus an award under § 1988(b) is unwarranted. Second, it argues that it should not have to pay Ms. Reams's costs and attorney fees for defending Sky Harbor's RICO claims.

### a. *Fees for Sky Harbor's § 1983 Claims*

Sky Harbor does not dispute that Ms. Reams was the prevailing party on its § 1983 claims. It also does not challenge the district court's calculation of the attorney fees attributable to Ms. Reams's defense of the § 1983 claims. Sky Harbor's only assertion of error is that its § 1983 claims were not frivolous or vexatious, and thus Ms. Reams was not entitled to fees under § 1988(b).

A district court's determination that a party has pursued frivolous claims with improper motive is entitled to substantial deference. *See Barrett v. Tallon*, 30 F.3d 1296, 1302 (10th Cir. 1994). District courts have a "superior understanding of the litigation,"

*Hensley*, 461 U.S. at 437, and their role in awarding fees is a "sphere of judicial decision making" that typically is unsuited for "appellate micromanagement," *Fox*, 131 S. Ct. at 2216. For example, where a court awarded fees as a form of Rule 11 sanctions for a plaintiff's vexatious litigation, we vacated the award only because it was "based on a clearly erroneous assessment of the evidence," *Barrett*, 30 F.3d at 1302 (quotations omitted), and because there was "nothing in the record show[ing] an improper motive," *id.*

After reviewing the record, we conclude that the district court had an adequate basis to determine that Sky Harbor's § 1983 claims against Ms. Reams were frivolous. Sky Harbor's § 1983 equal protection claim was frivolous due to the lack of any evidence that (1) Sky Harbor and GLA were similarly situated in all material respects, *see Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1217 (10th Cir. 2011), (2) the Board's decision to not renew its leases with Sky Harbor lacked a rational basis, *see id.* at 1216, and (3) Ms. Reams acted with malice, *see Jennings v. City of Stillwater*, 383 F.3d 1199, 1211 (10th Cir. 2004).

We also agree with the district court that Mr. Martin's First Amendment claim—the notion that "[Ms.] Reams violated his right to free speech by instructing [people] not to speak with him"—was frivolous and lacked "even [a] scintilla of evidence" to support it. Aple. Appx. (11-8004), Vol. IV, at 932 (quotations omitted). The court found this claim to be "emblematic of [Mr.] Martin's indiscriminate litigation strategy—if there was an argument to be made, he made it, regardless of merit." *Id.* at 933.

Sky Harbor's § 1983 claim for government defamation was equally frivolous. Sky Harbor did not establish that Ms. Reams's statements to the WyDOT Commission were published, and Ms. Reams's statements to the press that Sky Harbor was under investigation were true.

The accusations against Ms. Reams also support the district court's finding that Sky Harbor asserted its § 1983 claims in bad faith. As the district court noted, Sky Harbor made allegations against Ms. Reams during the litigation that were irrelevant to the issues raised. Some of these allegations were personal in nature and appeared to be part of an effort to embarrass Ms. Reams.

The district court was on the front lines of this litigation and was in a better position than we are to determine that Sky Harbor's § 1983 claims were frivolous and vexatious. *See Hensley*, 461 U.S. at 437; *Barrett*, 30 F.3d at 1302. Its decision to award Ms. Reams attorney fees under § 1988(b) for costs associated with defending Sky Harbor's § 1983 claims was not an abuse of discretion.

#### b. *Fees for Sky Harbor's RICO Claims*

Sky Harbor also argues that Ms. Reams should be responsible for her own costs and attorney fees in defending Sky Harbor's RICO claims. We construe this argument as

asserting that § 1988(b) does not permit the award of attorney fees related to the defense of RICO claims.[19]

When Ms. Reams moved for attorney fees, she requested fees associated with the defense of Sky Harbor's RICO claims. Ms. Reams noted, however, that her counsel had "made a reasonable effort to separate out . . . fees that are associated solely with defending Plaintiffs' RICO allegations (those which are in no way intertwined with the defense of [Sky Harbor's] § 1983 claims and the overall defense of this case)" if the court decided to not award her fees for the defense of the RICO claims. Aplt. Appx. (11-8004), Vol. 4, Tab 3, at 6 n.1. According to Ms. Reams, she expended $6,010.50 in defending the RICO claims.

The district court ruled that Sky Harbor's RICO claims were frivolous. It awarded Ms. Reams a total of $48,476.50, which "reflect[ed] billing entries related to the claims brought pursuant to 42 U.S.C. § 1983 *and the civil RICO statute*." Aple. Appx. (11-8004), Vol. IV, at 937 (emphasis added). The court's calculation included an individual line item of $5,102 for defending Sky Harbor's RICO claims. *See id.* at 939.

---

[19]This argument is fairly contained in Sky Harbor's assertion that neither Rule 54 of the Federal Rules of Civil Procedure nor 18 U.S.C. § 1964 permits the recovery of attorney fees to a defendant in a RICO action, and that litigants generally are responsible for their own attorney fees. *See* Aplt. Br. (11-8004) at 68-70.
    We also note that Sky Harbor raised, and the district court did not address, the argument that § 1988(b) does not "permit recovery of costs and attorney fees to a RICO Defendant." Aplt. Appx. (11-8004), Vol. 4, at 83.

The district court erred in awarding Ms. Reams attorney fees under § 1988(b) for the defense of Sky Harbor's RICO claims. Section 1988(b) allows district courts to award reasonable attorney fees to the prevailing party in proceedings to enforce various civil rights provisions, including § 1983. *See Hensley*, 461 U.S. at 429. The RICO statute, 18 U.S.C. §§ 1961-1968, is not listed among the provisions eligible for attorney fees under § 1988(b). *See* 42 U.S.C. § 1988(b).

The district court did not explain its reasoning for awarding fees under § 1988(b) in connection with Sky Harbor's RICO claims. Although the court may have viewed Ms. Reams's defense of the RICO claims as linked to the defense of the § 1983 claims, Ms. Reams's motion for attorney fees explained that at least some of the fees related to the RICO claims are "in no way intertwined with the defense of [Sky Harbor's] § 1983 claims and overall defense of this case." Aplt. Appx. (11-8004), Vol. 4, Tab 3, at 6 n.1. Nor are we aware of any case in which a defendant has been awarded attorney fees under § 1988(b) for the successful defense of RICO claims.

Accordingly, we vacate the district court's award of attorney fees for the defense of the RICO claims and remand solely on the limited issue of the appropriate fee award to Ms. Reams.[20]

---

[20]Our decision has no impact on the attorney fees awarded to the Board. The district court awarded the Board $149,926.97 in fees based on a contractual provision in the Paint Shop lease allowing a non-breaching party to recover attorney fees and costs incurred in enforcing the lease. Sky Harbor has not challenged this provision on appeal.

### III. CONCLUSION

We affirm the district court's grant of the Defendants' motions for summary judgment and its grant of the Defendants' motion to strike Sky Harbor's Rule 59(e) motion.[21] We also conclude that the district court did not abuse its discretion in awarding Ms. Reams attorney fees to defend against Sky Harbor's § 1983 claims. The court erred, however, in awarding Ms. Reams fees under § 1988(b) for the defense of at least part of Sky Harbor's RICO claims. We vacate that portion of the court's fee award and remand solely on the limited issue of the appropriate fee award to Ms. Reams.

ENTERED FOR THE COURT

Scott M. Matheson, Jr.
Circuit Judge

---

[21] Days before oral argument, Sky Harbor filed a motion for judicial notice and to supplement the record. This motion seeks to present evidence about the alleged illegality of the Paint Shop lease that was not part of the record before the district court. Because we do not consider such evidence in reviewing a district court's summary judgment ruling, *see John Hancock Mut. Life. Ins. Co. v. Weisman*, 27 F.3d 500, 506 (10th Cir. 1994), and because we affirm the decision to not consider the illegality of the Paint Shop lease on procedural grounds, we deny Sky Harbor's motion.