# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 17

### OCTOBER TERM, A.D. 2015

### February 9, 2016

SKY HARBOR AIR SERVICE, INC., a
Wyoming Corporation,

Appellant
(Defendant),

v.

CHEYENNE REGIONAL AIRPORT
BOARD, a Wyoming Corporation,

Appellee
(Plaintiff).

SKY HARBOR AIR SERVICE, INC., a
Wyoming Corporation,

Appellant
(Appellant/Defendant),

v.

CHEYENNE REGIONAL AIRPORT
BOARD, a Wyoming Corporation,

Appellee
(Appellee/Plaintiff)

SKY HARBOR AIR SERVICE, INC., a
Wyoming Corporation, and H. PAUL
MARTIN,

Appellants
(Defendants),

S-15-0143, S-15-0144, S-15-0145

v.

CHEYENNE REGIONAL AIRPORT
BOARD, a Wyoming Corporation,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
*The Honorable Steven K. Sharpe, Judge*

*Representing Appellant(s):*

   *Susan Martin, Wellington, Colorado.*

*Representing Appellee:*

   *Patrick M. Brady, Jane M. France, and Raymond W. Martin, Sundahl, Powers, Kapp &*
   *Martin, LLC, Cheyenne, Wyoming. Argument by Mr. Martin.*

**Before BURKE, C.J., and HILL and KAUTZ, JJ., and BROOKS and FENN, DJJ.**

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BROOKS, District Judge.**

[¶1]    These three consolidated appeals are the culmination of years of litigation between the parties. They involve a tangled web of claims and allegations between the Appellant ("Sky Harbor") and the Appellee (Cheyenne Regional Airport or "Airport"). At the heart of the controversy is Sky Harbor's alleged failure to pay rent to the Airport. The focus of Sky Harbor's defense is that the District Court lacked subject matter jurisdiction to decide any of the cases now on appeal. The District Court disagreed and generally found in favor of the Airport in all three cases. We affirm.

## ISSUES

[¶2]    The parties raised numerous issues on appeal. The Court finds the following issues to be dispositive:

1. Did the District and Circuit Courts lack subject matter jurisdiction in the three combined appeals?

2. If the lower Courts had subject matter jurisdiction, were judgments entered in accordance with the law?

## FACTS

[¶3]    Sky Harbor ran a Fixed Based Operator ("FBO") business at the Airport for many years. An FBO provides mooring, hangar space, fuel, maintenance, and other services for general aviation users of the Airport. Sky Harbor entered into an FBO lease with the Airport in September of 1996. The lease contained a termination date of December 31, 2011.

[¶4]    In addition, the Airport decided to renovate a hangar and convert it into an aircraft paint shop. The Airport received partial funding for the renovation from the U.S. Department of Commerce Economic Development Administration ("EDA"). The Paint Shop became operational in 1997. It was operated by several entities, but was never successful. The Paint Shop lease was taken over by Sky Harbor in 2004.

[¶5]    Thereafter, Sky Harbor had difficulty staying current with rent payments on both the FBO and Paint Shop leases. In 2006, Sky Harbor sought and obtained additional funding through a Small Business Administration ("SBA") grant which was ultimately administered by United Western Bank ("Bank")[1] of Denver, Colorado.

---

[1] Technically, Matrix Capital Bank was the original lender. United Western Bank later acquired the

1

[¶6]   In 2006, there was an amendment to the FBO lease which allowed Sky Harbor to extend the lease to December 31, 2018, if certain conditions were met.  In 2006, there was also an agreement between Sky Harbor and the Airport which allowed Sky Harbor to assign its interest in the FBO lease to the Bank as collateral for the SBA loan.  The Assignment of Sky Harbor's interest to the Bank included the following:

1. If Sky Harbor defaulted under the lease, the Bank could reassign the lease to a new FBO operator who would assume all of Sky Harbor's responsibilities;

2. That the Bank would have no liability under the lease unless the Bank itself took over the lease;

3. That Sky Harbor would remain fully liable for all obligations under the lease;

4. If the Bank took possession of the lease it would pay any unpaid rent;

5. If the Bank took possession of the lease it would make payments due under the lease, but if the Bank abandoned the lease or reassigned the lease, the Bank would have no further obligations to the Airport;

6. The Airport would not terminate the lease without giving the Bank notice of Sky Harbor's default and the opportunity to cure the default within 60 days from receipt of the notice.

[¶7]   On October 6, 2010, the Airport gave the Bank notice of Sky Harbor's default under the FBO lease.  The Airport alleged that Sky Harbor had failed to pay rent due, failed to pay required insurance premiums, and had failed to meet minimum performance standards.  There was no attempt to cure the default by the Bank or Sky Harbor.  On December 23, 2010, the Airport terminated the FBO lease with Sky Harbor.  On January 21, 2011, the Bank failed and went into Federal Deposit Insurance Corporation ("FDIC") receivership.

---

assets of Matrix, including responsibility for Sky Harbor's accounts.  At all times relevant to this appeal, United Western Bank was the lender and the Court will not further distinguish between these two banks.

## PROCEDURAL BACKGROUND

### Federal Court Litigation

[¶8]    In 2008, Sky Harbor initiated litigation against the Airport in the United States District Court for Wyoming, based on the Paint Shop lease. *Sky Harbor Air Serv., Inc. v. Reams*, 491 Fed. Appx. 875, 879 (10th Cir. 2012).   Sky Harbor asserted claims for extortion, fraud, conspiracy, defamation, violation of Constitutional rights, breach of contract, and multiple other causes of action. *Id*. at 880.   The Airport counterclaimed for breach of contract. *Id*.  Ultimately, the U.S. District Court granted summary judgment in favor of the Airport and awarded the Airport $429,809.20 in damages, attorney fees, and costs. *Id*.

[¶9]    That Judgment was appealed by Sky Harbor to the United States Court of Appeals for the Tenth Circuit.   The Tenth Circuit generally affirmed the District Court.   Sky Harbor did not appeal to the United States Supreme Court.

### Ejectment Action (S-15-0143)

[¶10]   After the Airport terminated the FBO lease in December of 2010, the Airport filed a petition for ejectment and recovery of real property in February 2011.   Suit was brought in Wyoming State District Court, seeking possession of the FBO buildings and removal of Sky Harbor from the premises.   Sky Harbor filed multiple counterclaims.   The Airport then filed a motion for summary judgment asking the District Court to address only the FBO lease termination date.   In 2012, the District Court, in a comprehensive opinion, concluded the FBO lease expired by its own terms on December 31, 2011, and was never extended.   The claim for ejectment was therefore granted.

[¶11]   The Airport then filed another motion for summary judgment in the same case, to determine whether Sky Harbor was in breach of the FBO lease, and whether the Airport was due any damages.   After some procedural starts and stops, the District Court concluded that Sky Harbor breached multiple amendments to the FBO lease.   A judgment was entered in the ejectment action, awarding the Airport $13,735.39 in uncontested damages for failure to pay insurance premiums regarding the FBO lease.

### Forcible Entry and Detainer Action (S-15-0144)

[¶12]  On July 5, 2011, the Airport filed a complaint for forcible entry and detainer ("FED") in Circuit Court.   At that time, the ejectment action was pending in District Court.  The Circuit Court held a hearing and heard testimony from witnesses for both the Airport and Sky Harbor.   The Court found in favor of the Airport and awarded a judgment of $50,550 for rent due on the FBO lease.

3

**Garnishment Action (S-15-0145)**

[¶13]  The Airport filed a garnishment action in the District Court in an attempt to collect the $429,809.20 judgment entered by the Federal Court.  By this time, the FED action had resulted in a judgment against Sky Harbor.  Sky Harbor posted a bond, and the FED judgment was stayed pending Sky Harbor's appeal to the District Court, which then affirmed the Circuit Court.  The District Court issued two writs of garnishment for funds held by the District and Circuit Courts in the FED action.  Sky Harbor filed an objection to the garnishment and moved to join the three related dockets.  The District Court then consolidated the garnishment, FED and ejectment cases.

**Sky Harbor's Motion to Dismiss**

[¶14]  While the three state cases were ongoing, Sky Harbor filed a motion to dismiss all three suits.  The thrust of Sky Harbor's motion was that the District Court did not have subject matter jurisdiction to continue the litigation because Sky Harbor's Bank had gone into receivership with the FDIC.  It was Sky Harbor's assertion that since it had assigned its interest in the FBO lease to the Bank, these cases could not proceed because they were now under the jurisdiction of the FDIC.

[¶15] The District Court denied Sky Harbor's motions to dismiss.  The three consolidated cases were appealed to this Court, following the District Court's entry of judgment on February 24, 2015.

*STANDARD OF REVIEW*

[¶16]  This Court must first determine whether the District and Circuit Courts had subject matter jurisdiction to proceed in the three cases now before us.  "The existence of subject matter jurisdiction is a question of law that we review *de novo*." *Excel Constr., Inc. v. Town of Lovell*, 2011 WY 166, ¶ 12, 268 P.3d 238, 241 (Wyo. 2011) (quoting *Madsen v. Bd. of Trustees of Mem'l Hosp. of Sweetwater Cnty.*, 2011 WY 36, ¶ 9, 248 P.3d 1151, 1153 (Wyo. 2011)).  A court's subject matter jurisdiction may be challenged at any time. *Northern Laramie Range Foundation v. Converse County Bd. of Cnty. Comm'rs*, 2012 WY 158, ¶ 22, 290 P.3d 1063, 1073 (Wyo. 2012).  "Subject matter jurisdiction refers to the power of a court to hear and determine cases of the general class to which the proceedings in question belong." *State Farm Mut. Auto. Ins. Co. v. Kunz*, 2008 WY 71, ¶ 6, 186 P.3d 378, 380 (Wyo. 2008).  "If the district court lacked subject matter jurisdiction, this Court has jurisdiction on appeal, not on the merits, but only as to the jurisdictional issue." *Rock v. Lankford*, 2013 WY 61, ¶ 18, 301 P.3d 1075, 1080 (Wyo. 2013) (quoting *Hall v. Park Cnty.*, 2010 WY 124, ¶ 3, 238 P.3d 580, 581 (Wyo. 2010)).  "The absence of subject matter jurisdiction makes dismissal, rather than affirmance, the

proper course." *Hall*, ¶ 3, 238 P.3d at 581; *see also Wilson v. Town of Alpine*, 2005 WY 57, ¶ 7, 111 P.3d 290, 292 (Wyo. 2005).

## *DISCUSSION*

**Subject Matter Jurisdiction**

[¶17]  Sky Harbor asserts that when United Western Bank went into FDIC receivership, the Airport was required to exhaust the administrative claims process found in the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C.A. § 1821.  Sky Harbor contends that unless and until that claims process was followed by the Airport, no Wyoming State Court or Federal Court had subject matter jurisdiction to decide any issues existing between the parties.

[¶18]  FIRREA was passed to enable the FDIC to expeditiously wind up the affairs of hundreds of failed banks.  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1141 (D.C. Cir. 2011).  FIRREA allows the FDIC to ensure the assets of a failed bank are distributed fairly among those with valid claims against the financial institution.  *Rundgren v. Washington Mut. Bank, FA*, 760 F.3d 1056, 1060 (9th Cir. 2014), *cert. denied*, 135 S.Ct. 1560, 191 L.Ed.2d 639 (2015).  FIRREA applies to claims based on the assets, acts, or omissions of a depository institution for which the FDIC has been appointed receiver.  12 U.S.C.A. § 1821(d)(13)(D) (West).

[¶19]  "The primary purpose behind FIRREA's exhaustion scheme is to allow [the receiver] to perform its statutory function of promptly determining claims so as to quickly and efficiently resolve claims against a failed institution without resorting to litigation."  *Triad Bank v. First-Citizens Bank & Trust Co.*, 85 F. Supp. 3d 1258, 1264 (D. Colo. 2015) (citing *Rosa v. Resolution Trust Corp.*, 938 F.2d 383, 396 (3d Cir. N.J. 1991)).  FIRREA provides specific limitations on a court's ability to hear cases involving failed financial institutions:

> (D)   Limitation on judicial review.  Except as otherwise provided in this subsection, no court shall have jurisdiction over—
>
> (i)   any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or

5

> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C.A. § 1821(d)(13)(D) (West).

[¶20] The terms "creditor," "claim," and "claimant" are not specifically defined in any section of FIRREA. *FDIC v. Updike Bros.*, 814 F. Supp. 1035, 1039 (D. Wyo. 1993). The language of § 1821(d)(13)(D) is quite broad, however, and precludes jurisdiction over "any claim or action" seeking a determination with respect to the assets of any depository institution. *Id*. "Section (d)(13)(D) also precludes jurisdiction over 'any claims relating to any act or omission of' the financial institution or of the receiver." *Id*. Sky Harbor urges that the FBO lease was an asset of the failed Bank and is therefore subject to FIRREA.

[¶21] There is no doubt that District Courts in Wyoming have the power and jurisdictional authority to hear ejectment cases and issues relating to garnishment and appeals from Circuit Court. *See* Wyo. Stat. Ann. §§ 1-32-201 thru 1-32-216; Wyo. Stat. Ann. §§ 1-15-101 thru 1-15-105; W.R.A.P. 1.04. The question then, is whether FIRREA stripped the District Court of its subject matter jurisdiction in this litigation. When determining whether the administrative process of FIRREA should apply, courts have admonished that "[t]he determining factor in these cases is not the identity of the defendant or when the complained-of acts occurred, but rather, the nature of the claim: are plaintiffs challenging independent acts of a third party or are they seeking a determination of rights with respect to an asset of a failed bank?" *Westberg v. FDIC*, 926 F. Supp. 2d 61, 69 (D.D.C. 2013).

[¶22] Here, the Airport is seeking redress for the independent acts of Sky Harbor. These cases are about Sky Harbor's failure to pay rent and other obligations pursuant to the FBO lease with the Airport. Sky Harbor, as a tenant, occupied and used land and facilities owned by the Airport. Sky Harbor did not compensate the Airport for the use of the Airport's property as Sky Harbor agreed to do.

[¶23] Sky Harbor is not a bank or a financial institution. The lease may have been assigned to the Bank as collateral for a loan, but it did not immunize Sky Harbor from its failure to pay rent to the Airport. The very assignment relied upon by Appellant emphasized Sky Harbor's continuing obligation to the Airport by providing, "Whether or not Lender enters into possession of the Premises for any purpose, **Lessee [Sky Harbor] will remain fully liable for all obligations of Lessee under the lease**." (Emphasis added.) In other words, all parties, including the Bank, agreed that Sky Harbor had an ongoing duty under the lease to pay all rents and other monies due the Airport regardless of what the Bank did. In any event, the Airport's claims are not based on any obligation the Bank failed to perform. The Bank was not ejected from the premises nor was it

6

required to pay rent for Sky Harbor. This Court is not aware of any facts indicating that the Bank or the FDIC somehow became responsible for the FBO lease.

[¶24] A claim that cannot be resolved through FIRREA is not really a claim in that administrative process.[2] *Am. Nat'l Ins. Co.*, 642 F.3d at 1142. It is difficult to conceptualize what sort of FIRREA claim the Airport could have made. The Airport would still be limited to asserting the same claims that it could have asserted against the Bank, if it were still in existence. The Bank did not agree to indemnify Sky Harbor for its lease obligations. Sky Harbor's contention that the Airport should be required to assert claims against the Bank, for failing to come to Sky Harbor's rescue, is entirely misguided. Here, presenting a claim to the FDIC to collect rental payments the Bank never had any obligation to pay would be nonsensical. That is especially true when Sky Harbor had unconditionally agreed to remain responsible for lease payments.

[¶25] In *Gilmore v. Weatherford*, 694 F.3d 1160, 1169 (10th Cir. 2012), the Tenth Circuit concluded that exhaustion of administrative remedies is excused if the remedy would fail to provide relief and would clearly be useless. Where neither the failed bank nor the FDIC "bears any legal responsibility for claimant's injuries, the claims process offers only a pointless bureaucratic exercise. And [sic] we doubt Congress intended to force claimants into a process incapable of resolving their claims." *Am. Nat'l Ins. Co.*, 642 F.3d at 1143 (citation omitted).

[¶26] Similarly, this Court has previously acknowledged that a "party may be excused from having to exhaust his administrative remedies if (1) it would be futile for him to follow the administrative procedures, (2) the agency has adopted a policy or pursued a practice of general applicability which is contrary to the law, or (3) it is improbable that appropriate relief could be obtained through the administrative appeals process." *Koopman v. Fremont Cty. Sch. Dist. No. 1*, 911 P.2d 1049, 1054 (Wyo. 1996). Requiring the Airport to engage in a bureaucratic claim procedure that has no hope of resolving any claim is the essence of futility. Consequently, we find that the Airport had no duty to comply with FIRREA.

[¶27] Additionally, we find that Sky Harbor does not have standing to assert that the Airport had an obligation to comply with FIRREA. As we have previously explained, "Standing is a legal concept designed to determine whether a party is sufficiently affected to insure that the court is presented with a justiciable controversy." *Miller v. Wyoming Dep't of Health*, 2012 WY 65, ¶ 17, 275 P.3d 1257, 1261 (Wyo. 2012). We have adopted the three part test to determine standing as set forth in *Lujan v. Defenders of*

---

[2] The FIRREA claims process has long since expired. The Airport, even if it were required to do so, could not prevail on a claim to the FDIC, and would be left without any remedy.

*Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). *Miller*, ¶ 18, 275 P.3d at 1261. To establish standing a party must demonstrate (1) a concrete and particularized injury, (2) caused by the conduct complained of, and (3) that the injury will be redressed by a favorable decision. *Id.* In these cases, the Airport has no claim against the Bank or the FDIC that will benefit Sky Harbor. Sky Harbor has not demonstrated that it will be damaged by the failure to follow the FIRREA process.

[¶28] FIRREA can only determine claims relating to assets of a Bank in FDIC receivership. Here, the claims are against Sky Harbor for failure to pay rent and failure to leave the Airport premises. FIRREA doesn't protect Bank customers from their individual liabilities, simply because they borrowed from a failed bank. Since Sky Harbor has not suffered an injury that can be addressed by FIRREA, Sky Harbor does not have standing to demand compliance with the receivership claims procedure.

[¶29] Finally, it would appear to the Court that the Bank had no interest in the FBO lease at the time it went into FDIC receivership. The assignment of the FBO lease to the Bank required Sky Harbor to remain in compliance with the lease. If the Bank did not cure Sky Harbor's defaults within 60 days after the Airport gave the Bank notice, the Airport could terminate the lease. The Airport did provide the Bank and Sky Harbor with the 60-day notice of default on October 6, 2010. The Bank never cured the default, and the Bank's interest in the lease apparently terminated in December of 2010, approximately four weeks before the Bank went into receivership. The requirement to exhaust administrative remedies applies only when the FDIC is in possession of a Bank asset. *See Henrichs v. Valley View Dev.*, 474 F.3d 609, 614 (9th Cir. 2007). While the Bank and FDIC are free to pursue any legal claims they may have, it appears that the FBO lease was not an asset of the Bank when it went into FDIC receivership.

[¶30] Even if the lease was viewed as some sort of interest that the Bank once had, it was contingent at best. The Bank had no obligation to step into the shoes of Sky Harbor. In fact, neither the Bank nor the FDIC have attempted to take over the FBO lease. If they had wanted to do so, all rents would become the joint obligation of the Bank and Sky Harbor. When the Bank went into receivership in 2011, the lease was nothing more than Sky Harbor's bad debt. FIRREA is inapplicable where the Airport is not a creditor of the Bank, has not made any claim against the assets of a Bank, and does not assert any act or omission of the FDIC. *Hoxeng v. Topeka Broadcomm, Inc.*, 911 F. Supp. 1323, 1337 (D. Kan. 1996).

[¶31] It is therefore our conclusion that the District Court had subject matter jurisdiction to decide all of the cases now on appeal. The Airport had no claim against the Bank to submit to the FDIC and the FBO lease made Sky Harbor, not the Bank, responsible for rental payments. The Airport's only avenue of redress was through the court system.

[¶32]  We turn, then, to the question of whether the judgments against Sky Harbor were entered in accordance with law.  Sky Harbor claims that any garnishment actions relating to the judgment were invalid, the ejectment and FED actions should be dismissed, and ultimately, that Sky Harbor should regain possession of the FBO facilities.  We will address each argument in turn.

**Garnishment Action**

[¶33]  The garnishment case is primarily based upon a judgment entered in the United States District Court which pertained to the Paint Shop lease.  Sky Harbor also contends that the Federal Court decision was invalid and thus the garnishment action is invalid because the FIRREA claims process was not followed.

[¶34]  The Federal Court judgment in the Paint Shop litigation represents the vast majority of the amount due and owing the Airport and subject to garnishment.  This Court does not have the authority to reverse a decision of the 10th Circuit Court of Appeals.  That Court or the U.S. Supreme Court is the proper venue to contest the judgment rendered in the United States District Court.  *See Dowell v. Applegate*, 152 U.S. 327, 345-46, 14 S.Ct. 611, 618, 38 L.Ed. 463 (1894) (stating that a federal court judgment, being in full force and un-reversed, cannot be questioned in state court).  A party may not use state courts for a collateral attack on a Federal Court judgment. *Morton v. City of Boerne,* 345 S.W.3d 485, 488 (Tex. App. 2011).

[¶35]  In any event, there was no bank that was in FDIC receivership that had anything to do with the Paint Shop lease.  Furthermore, the monies garnished in the FED case were posted by Sky Harbor in that case and also had nothing to do with a bank in FDIC receivership.  As such, FIRREA does not apply to the garnishment.

[¶36]  Sky Harbor's other assertion, though not supported by any cogent argument or authority, is that since the EDA disallowed a small portion of the Paint Shop lease, the entire lease and judgment thereon should be voided.  The EDA had funded some $650,000 for renovations to a hangar to be used as a Paint Shop.  Approximately $47,000 was disallowed by the EDA for which the EDA apparently sought a refund from the Airport.  Sky Harbor contends therefore, that the Federal Court judgment on the Paint Shop lease is invalid and no garnishment can occur regarding that judgment.

[¶37]  We find that Sky Harbor's argument has no merit.  This again is a collateral attack on a Federal Court judgment which this Court cannot review.  The EDA is not a party to these cases, and there is nothing in the record to indicate that the EDA intended in any way to modify any of the judgments rendered in the cases between Sky Harbor and the Airport.  The District Court correctly observed that the actions of the EDA did not immunize Sky Harbor from its obligations to pay $400,000 in rents due.

9

**FED Action**

[¶38]   The Circuit Court held an evidentiary hearing on this matter, and then entered a judgment for $50,550 for unpaid rent and costs regarding the FBO lease.  Sky Harbor posted a bond and the judgment was stayed pending an appeal to the District Court.  The judgment was affirmed by the District Court on July 3, 2013.

[¶39]   In reviewing the record, there was evidence that Sky Harbor owed unpaid rents on the FBO lease.  The total of the unpaid rent was approximately $50,550.  We will not disturb a trial court's findings of fact unless they are unsupported by the evidence or that, based on all the evidence, this Court is left with a definite and firm conviction that a mistake has occurred. *Lawrence v. City of Rawlins*, 2010 WY 7, ¶ 13, 224 P.3d 862, 868 (Wyo. 2010).  In this case, the evidence supports the judgment.  This Court cannot say that any mistake occurred that merits reversal in light of all the evidence.

**Ejectment Action**

[¶40]   The appeal in the ejectment action requires us to review the summary judgment granted to Appellee.  Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(c).  We have often stated that standard of review:

> We review a summary judgment in the same light as the district court, using the same materials and following the same standards.  We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record.  A material fact is one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties.  If the moving party presents supporting summary judgment materials demonstrating no genuine issue of material fact exists, the burden is shifted to the non-moving party to present appropriate supporting materials posing a genuine issue of a material fact for trial.  We review a grant of summary judgment deciding a question of law de novo and afford no deference to the district court's ruling.

*Lindsey v. Harriet*, 2011 WY 80, ¶ 18, 255 P.3d 873, 880 (Wyo. 2011) (internal citations omitted).  We can affirm an order granting summary judgment on any basis appearing in the record. *Magin v. Solitude Homeowner's Inc.*, 2011 WY 102, ¶ 20, 255 P.3d 920, 927

(Wyo. 2011).

[¶41] The ejectment case was filed by the Airport in February of 2011. The Airport filed two motions for summary judgment. As noted earlier, the first motion was to determine whether the FBO lease was extended beyond the stated termination date. The FBO lease contained a termination date of December 31, 2011. Pursuant to an amendment to the FBO lease, it could be extended to December 31, 2018. However, the lease could not be extended until certain conditions were met. Those conditions included:

1. That all accounts be current;

2. That deferred rent be paid in full;

3. That the sum of $15,487 be prepaid at the time the option is exercised; and

4. That by October 31, 2007 Sky Harbor give written notice of its intent to exercise the option to extend.

[¶42] It was undisputed from the record that none of these requirements were fulfilled, and that there were no genuine issues of material fact or law before the District Court. Sky Harbor contended that the lease was extended for several reasons, including an oral agreement, an extension by virtue of consent to the lease assignment, Federal law and regulations, illegality and breach of the implied covenants of good faith and fair dealing.

[¶43] However, based on our review of the record and the arguments and brief of Sky Harbor, the Appellant does not really contend that it satisfied the above-mentioned prerequisites for an extension of the lease. We conclude that the District Court's finding that the lease was not extended beyond December 31, 2011 was correct and therefore the order of ejectment was proper.

[¶44] The second summary judgment motion by the Airport sought to establish a breach of certain lease provisions, damages, and dismissal of Sky Harbor's counterclaims. The record established that the 3rd amendment to the FBO lease provided as follows:

In addition to any other fees required herein [Sky Harbor] shall pay all amounts required to be paid by the Board to The Cheyenne-Laramie County Economic Development Joint Powers Board to retire the loan from the Joint Powers Board to the Airport Board for the main hangar improvements. Such payments shall be included with the regular monthly payment

11

to the Board. The additional payments are expected to be approximately $1,725 per month. A balloon payment equal to the remaining balance on the loan shall be made at the end of the term of this lease.

The 4th amendment to the FBO lease provided as follows:

At the time of exercise of such option to extend the term of the [FBO] Lease, [Sky Harbor] shall prepay the amount of $15,487, and thereafter [Sky Harbor's] obligation to pay the additional fee set forth in Section 3 FEES, as inserted by the third amendment to [the FBO lease] shall continue, but the $15,487 payment shall be considered in satisfaction of the balloon payment that was otherwise due from [Sky Harbor] at the conclusion thereof.

[¶45]  The record also established by affidavit that the required payments were not made and Sky Harbor offered no evidence to the contrary.  The District Court concluded there was a breach but there was an issue of fact as to the amount of damages.  The Airport expedited resolution of the ejectment action by voluntarily waiving its right to trial on these damages.

[¶46]  The Airport also sought damages for reimbursement of insurance premiums.  The Airport filed an affidavit establishing that payment of insurance premiums was contractually agreed upon and that Sky Harbor did not pay that premium.  Further, Sky Harbor did not produce any evidence indicating that it had paid the insurance premiums. Summary judgment was therefore proper on that issue.

**Sky Harbor's Remaining Issues**

### *Failure to Join an Indispensible Party*

[¶47] The Appellant advances several other arguments.  Sky Harbor contends the District Court should have joined the FDIC and Bank as indispensible parties. Rule 19 of the Wyoming Rules of Civil Procedure provides, in part:

**(a) Persons to Be Joined if Feasible.** − A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if: (1) in the person's absence complete relief cannot be accorded among those already parties; or (2) the person claims an interest

relating to the subject of the action and is so situated that the disposition of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect that interest; or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.

Matters of joinder are left to the discretion of the court and will not be overturned by this Court, absent a showing that the ruling was arbitrary and capricious. *Grove v. Pfister*, 2005 WY 51, ¶ 4, 110 P.3d 275, 277 (Wyo. 2005).

[¶48] There has been no showing that the District Court's ruling was arbitrary and capricious. The District Court's rulings regarding Sky Harbor's obligations to the Airport do not require the presence of the FDIC or the Bank. Sky Harbor is being held accountable for the rent it was required to pay on the Paint Shop and FBO leases. The Paint Shop lease judgment didn't involve the FDIC or the Bank. The FBO lease, although assigned to the Bank, still obligated Sky Harbor to make rental payments. The Airport's claim was only against Sky Harbor. The rights of the FDIC and Bank were not affected and have not been altered or extinguished by this litigation. Both can still assert any rights available to those entities.

### *Insufficient Discovery*

[¶49] Sky Harbor also alleges that it needed more time for discovery. This litigation has been ongoing for years. In the ejectment action alone, Sky Harbor had 19 months to develop the facts it needed to oppose the Airport's motions for summary judgment. There was ample time for Sky Harbor to undertake and complete discovery.

### *Improper Forfeiture of Property*

[¶50] Appellant next alleges there was an improper forfeiture of property. It is not clear to the Court what property was forfeited or why anything was improper. The District Court found that the FBO lease did not extend beyond December 31, 2011. Sky Harbor opposed that motion and asserted numerous defenses. However, the clear language of the lease required written notice of an extension and current payment of all amounts due and

13

owing.  The undisputed evidence was those conditions were not fulfilled and the FBO lease was not extended.[3]  Therefore, there was no improper forfeiture.

### *Wrongful Dismissal of Counterclaims and Defenses*

[¶51] Sky Harbor also alleges that the District Court wrongfully dismissed its counterclaims and defenses without the opportunity to be heard.  However, the District Court granted two summary judgment motions and denied Sky Harbor's motion to dismiss.  The first summary judgment pertained to the expiration date of the FBO lease.  In that decision, the judge considered every conceivable defense and ruled properly that for the lease to be extended, certain conditions had to be met.

[¶52]  In the District Court's decisions of July 2, 2013, denying Sky Harbor's motion to dismiss, and April 14, 2014, granting summary judgment as to insurance premiums, Sky Harbor's defenses and counterclaims were fully considered and adjudicated.  The final order was not entered until February 2015 which gave the Appellant additional time to

---

[3] This Court recognizes that there appears to be some inconsistency in the District Court decisions regarding the FBO lease termination.  The 2012 summary judgment concluded that the expiration date for the FBO lease was December 31, 2011.  On the other hand, the District Court concluded in 2013 that the FBO lease terminated when the Bank failed to cure Sky Harbor's default in December 2010.  However, the original summary judgment was focused on whether the FBO lease had been extended to December 31, 2018.  The undisputed contractual evidence was that multiple conditions needed to be met by Sky Harbor before the lease could be extended.  Those conditions were not met and the lease was not extended.  Therefore in 2012 an order of ejectment was granted.

The second decision of the District Court denied Sky Harbor's motion to dismiss for lack of subject matter jurisdiction.  The District Court pointed out that pursuant to the terms of the assignment of collateral to the Bank, the Bank had 60 days to cure once the Airport gave the Bank notice of Sky Harbor's default.  Notice was given, the Bank didn't cure, and the Airport terminated the FBO lease in December of 2010.  The District Court therefore determined that the FBO lease was no longer an asset of the Bank when it went into receivership in January of 2011.

We believe the two decisions were not necessarily inconsistent but in any event really made no substantive difference.  In the first motion, the issue was whether the lease had been extended beyond 2011.  If the lease had not been extended, ejectment was clearly appropriate as of 2012.  The District Court properly found that the lease was not extended.  In the second jurisdictional motion, the District Court found, as did this Court, that one of the reasons subject matter jurisdiction existed was because the FBO lease was no longer collateral of the Bank when it went into FDIC receivership.  However, we also found jurisdiction existed because there was no real claim to be asserted in the FIRREA process and that Sky Harbor lacked standing to raise that issue.

Pending appeal, the FED order was stayed when Sky Harbor posted a bond and appealed.  The order of ejectment was not entered until 2012.  Sky Harbor was allowed to remain on the premises for the term of the lease in any event.

bring disputed matters to the attention of the District Court.

[¶53] These cases have been ongoing since 2011. At least three times since then the District Court considered Sky Harbor's numerous claims. Appellant's assertion that the District Court failed to consider or even hear their defenses and counterclaims is not supported by the record.

## *CONCLUSION*

[¶54] The central theme of Sky Harbor's appeal is that no court, Federal or State, had subject matter jurisdiction once the Bank went into receivership. Sky Harbor maintains that the Airport's $429,809.20 Federal Court judgment was void, any garnishment actions related thereto were invalid, the ejectment and FED actions should be dismissed, and ultimately, that Sky Harbor should regain possession of the FBO facilities. Sky Harbor apparently believes that the Airport is simply without any remedy to collect the hundreds of thousands of dollars it is owed by Appellant.

[¶55] We conclude that the District and Circuit Courts had subject matter jurisdiction. This case is not about a bank, the FDIC, or contingent interests of a financial institution. Indeed, in the seven years this litigation has proceeded through the Courts, neither the Bank nor the FDIC has attempted to assume any of Sky Harbor's obligations.

[¶56] These cases concern Sky Harbor's individual responsibilities and its failure to pay rent and to leave the Airport premises. Those are the facts and Appellant's arguments cannot justify Sky Harbor's refusal to do what it contractually agreed to do. The judgments in the ejectment, FED and garnishment cases are affirmed.