2017 WY 131

**MEMORIAL HOSPITAL OF SWEETWATER COUNTY,** Appellant (Defendant),

v.

**Darrell MENAPACE, Appellee (Plaintiff).**

**S-17-0055**

Supreme Court of Wyoming.

November 9, 2017

Representing Appellant: Corinne E. Rutledge and Erin A. Barkley of Lathrop & Rutledge, P.C., Cheyenne, WY. Argument by Ms. Barkley.

Representing Appellee: G. Bryan Ulmer III, Emily R. Rankin, and Michael F. Lutz of The Spence Law Firm, LLC, Jackson, WY. Argument by Mr. Lutz.

Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.

HILL, Justice.

[¶1] Darrell Menapace filed a medical malpractice complaint against Memorial Hospital of Sweetwater County (the Hospital) alleging the Hospital was vicariously liable for the acts or omissions of a physician who worked at the hospital as an independent contractor. The Hospital moved for summary judgment on the ground that the physician was not a Hospital employee and the Hospital was therefore immune from liability for his acts or omissions. The district court found that the Hospital waived its immunity by purchasing liability insurance and on that basis de-

nied the Hospital's summary judgment motion. We reverse.

## ISSUE

[¶2] The Hospital states the issue on appeal as:

Was Memorial Hospital of Sweetwater County "legally responsible" for the acts or omissions of alleged ostensible agent Dr. Lin Miao at the time of the treatment at issue, such that it waived its immunity to ostensible agency claims under the insurance exception at Wyo. Stat. Ann. § 1-39-118(b)?

## FACTS

[¶3] Memorial Hospital of Sweetwater County is a government entity operating in Rock Springs, Wyoming. The Hospital carries a liability insurance policy, issued by UMIA Insurance, Inc. (the UMIA Policy), which includes the following coverage for medical professional liability claims against the Hospital:

UMIA agrees to pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as **damages** because of any **claim** or **claims** * * * arising out of the performance of **medical professional services** rendered or which should have been rendered * * * by the **insured** or any person for whose acts or omissions the **insured** is legally responsible. (emphasis in original to indicate defined policy terms)[1]

[¶4] In 2012, the Hospital entered into a contract with EmCare, Inc., which provided that for a period of three years, EmCare would be the exclusive provider of hospitalist physician services for the Hospital. One of the hospitalist physicians provided pursuant to that contract was Dr. Lin Miao. Dr. Miao was not an EmCare employee, but was a locum tenens physician provided by EmCare to cover EmCare shifts at the Hospital.[2]

[¶5] On June 6, 2013, Darrell Menapace was admitted to the Hospital with complaints of numbness and cramping in his legs and an inability to walk and was seen by Dr. Miao. Dr. Miao did not request a vascular consult and discharged Mr. Menapace on June 8, 2013. On June 11, 2013, Mr. Menapace saw a nurse practitioner, Angela Slinden, who scheduled him for a vascular consult to take place two and a half days later. On June 12, 2013, Mr. Menapace self-referred to the University of Utah where he was diagnosed with acute limb ischemia, sepsis, and acute renal failure, and underwent emergent bilateral above the knee amputations.

[¶6] On May 6, 2015, Mr. Menapace filed a complaint against the Hospital, Dr. Miao, and Angela Slinden.[3] Mr. Menapace's claims against the Hospital included, among others, a claim for vicarious liability for Dr. Miao's care and treatment of Mr. Menapace. The Hospital answered the complaint and asserted several affirmative defenses, including: the Hospital is not liable for actions of independent contractors; the Hospital is not liable for actions of ostensible agents; and the Hospital is a governmental entity immune from the claims against it.

[¶7] On June 30, 2016, the Hospital moved for partial summary judgment against Mr. Menapace's vicarious liability claims. In support of the motion, the Hospital asserted that under the Wyoming Governmental Claims Act (WGCA), the Hospital "cannot be held

---

1. The UMIA Policy defines "insured" to mean the named insured, which is the Hospital, and, relevant to our consideration, the Hospital's employees. The Policy's Individual Coverage Endorsement amends the definition of "insured" to include a locum tenens, which the endorsement defines as:

   Locum tenens means a healthcare worker temporarily employed by the **named insured** and serving in the place of an individual **insured** scheduled on this endorsement, provided that the locum tenens does not provide **medical professional services** at the same time as the

   **insured** a (sic) healthcare worker being replaced.

2. The record indicates Dr. Miao was a locum tenens physician, arranged by EmCare through another entity, Barton Associates, to cover EmCare shifts.

3. Angela Slinden was an employee of Hunter Family Medical Clinic in Rock Springs, and the complaint contained no allegation that she was affiliated with the Hospital. Mr. Menapace settled his claims against Ms. Slinden, and she is no longer a party to the case.

vicariously liable for the acts of a physician who was not its employee." On November 7, 2016, the district court issued an order denying the Hospital's motion. The court concluded that the Hospital's purchase of liability insurance, and in particular its coverage for "any person for whose acts or omissions" the Hospital "is legally responsible," acted as a waiver of its immunity and extended its liability under the WGCA to include liability for the acts or omissions of the Hospital's apparent agents, including Dr. Miao.

[¶8] On December 7, 2016, the Hospital filed a timely Notice of Appeal to this Court.[4]

## STANDARD OF REVIEW

[¶9] We review the district court's summary judgment ruling de novo:

> We review a grant of summary judgment deciding a question of law de novo. *Sky Harbor Air Serv., Inc. v. Cheyenne Reg'l Airport Bd.*, 2016 WY 17, ¶ 40, 368 P.3d 264, 272 (Wyo. 2016). In doing so, "We review a summary judgment in the same light as the district court, using the same materials and following the same standards." *Thornock v. PacifiCorp*, 2016 WY 93, ¶ 10, 379 P.3d 175, 179 (Wyo. 2016) (quoting *Rogers v. Wright*, 2016 WY 10, ¶ 7, 366 P.3d 1264, 1269 (Wyo. 2016)). "No deference is accorded to the district court on issues of law, and we may affirm the summary judgment on any legal grounds appearing in the record." *Cont'l Western Ins. Co. v. Black*, 2015 WY 145, ¶ 13, 361 P.3d 841, 845 (Wyo. 2015). "The summary judgment can be sustained only when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law." *Id.* * * *

*Halling v. Yovanovich*, 2017 WY 28, ¶ 12, 391 P.3d 611, 616 (Wyo. 2017).

[¶10] This appeal requires that we interpret an insurance policy, which is a question of law for this Court. *North Fork Land & Cattle, LLLP v. First Am. Title Ins.*

*Co.*, 2015 WY 150, ¶ 10, 362 P.3d 341, 345 (Wyo. 2015). We interpret insurance policies in the same manner as any other contract. *North Fork Land & Cattle*, ¶ 14, 362 P.3d at 346. Our review begins with the document's plain language, and

> we interpret the contract as a whole and read each provision in light of the others to find the plain meaning. We avoid interpreting provisions in a way that makes the other provisions inconsistent or meaningless. Finally, "[b]ecause we use an objective approach to interpret contracts, evidence of the parties' subjective intent is not relevant or admissible in interpreting a contract."

*Gumpel v. Copperleaf Homeowners Ass'n, Inc.*, 2017 WY 46, ¶ 29, 393 P.3d 1279, 1290 (Wyo. 2017) (quoting *Thornock v. PacifiCorp*, 2016 WY 93, ¶ 13, 379 P.3d 175, 180 (Wyo. 2016)).

## DISCUSSION

[¶11] The question on summary judgment, and now on appeal, is whether the Hospital is vicariously liable for the acts or omissions of its apparent agent, Dr. Miao, in his treatment of Mr. Menapace.[5] Although a hospital generally is vicariously liable for the acts or omissions of its apparent agents, *Sharsmith v. Hill*, 764 P.2d 667, 671-72 (Wyo. 1988), we have held that a county hospital, as a governmental entity, is immune under the WGCA from liability for the acts or omissions of an apparent agent. *Pfeifle*, ¶ 26, 317 P.3d at 580. The WGCA does, however, allow a governmental entity to purchase liability insurance "covering liability which is not authorized by [the WGCA]" and to thereby extend its liability to the extent of that coverage. Wyo. Stat. Ann. § 1-39-118(b)(i) (LexisNexis 2017). Our task on appeal is to determine whether the district court correctly concluded that the UMIA Policy acted to extend the Hospital's liability to include liability for its apparent agents.

---

4.  The denial of a defendant's summary judgment motion is generally not an appealable order, but we have recognized an exception for denials based on a claim of government immunity. *Campbell County Mem'l Hosp. v. Pfeifle*, 2014 WY 3, ¶ 12, 317 P.3d 573, 576-77 (Wyo. 2014).

5.  The Hospital disputes that Dr. Miao was the Hospital's apparent agent, but for the sake of argument, the Hospital has agreed to assume that Dr. Miao was the Hospital's apparent agent when he treated Mr. Menapace.

[¶12] Because we are concerned here with a county hospital, we begin our review of the district court's decision with the WGCA and its operation. We will then turn to the UMIA Policy to determine whether it operated to extend the Hospital's liability under the WGCA.

## A. Hospital's Liability under the WGCA

[¶13] In this appeal, we are concerned with the tort liability that the WGCA imposes on governmental entities and with the WGCA provisions authorizing governmental entities to purchase insurance. We begin with the provisions imposing tort liability. The WGCA provides:

A governmental entity and its public employees while acting within the scope of duties are granted immunity from liability *for any tort except as provided by W.S. 1-39-105 through 1-39-112.*

Wyo. Stat. Ann. § 1-39-104(a) (LexisNexis 2017) (emphasis added).

[¶14] This Court has long recognized that the WGCA is a "close-ended" claims act, meaning "a claim is barred unless it falls within one of the statutory exceptions." *Pfeifle*, ¶ 20, 317 P.3d at 579 (citing cases). The statutory exceptions identified in section 104(a) specifically define a governmental entity's liability in particular areas of governmental operations, including: operation of motor vehicles, aircraft or watercraft (§ 105); operation or maintenance of any building, recreation area, or public park (§ 106); operation of airports (§ 107); operation of public utilities and services (§ 108); operation of public hospital or outpatient health care (§ 109); negligence of health care providers who are public employees or providing service to a state institution or county jail (§ 110)[6]; and tortious conduct of peace officers (§ 112). Wyo. Stat. Ann. §§ 1-39-105 through 112 (LexisNexis 2017).[7]

[¶15] As is made clear by section 104 of the WGCA, sections 105 through 112 are the provisions of the Act that create exceptions to immunity and define a governmental entity's liability. The other WGCA provision we must consider is section 118, which authorizes any governmental entity to purchase liability insurance to cover "all or any portion" of the liability imposed under the WGCA. Wyo. Stat. Ann. § 1-39-118(b). Section 118(b) further provides, in relevant part:

(b) A governmental entity is authorized to purchase liability insurance coverage covering any acts or risks including all or any portion of the risks provided under this act. *Purchase of liability insurance coverage shall extend the governmental entity's liability as follows*:

(i) If a governmental entity has insurance coverage either exceeding the limits of liability as stated in this section *or covering liability which is not authorized by this act, the governmental entity's liability is extended to the coverage*[.]

Wyo. Stat. Ann. § 1-39-118(b)(i) (LexisNexis 2017) (emphasis added).

[¶16] Against this backdrop of the WGCA provisions defining governmental liability and allowing a governmental entity to purchase liability insurance, we turn to our consideration of the UMIA Policy and its effect on the Hospital's liability.

## B. The Hospital's Liability Insurance Policy (UMIA Policy)

[¶17] The disputed provision of the UMIA Policy provides coverage for "any claim or claims * * * arising out of the performance of medical professional services rendered or which should have been rendered * * * by the insured or by any person for whose acts or omissions the insured is legally responsible." The parties' disagreement centers on the phrase "any person for whose acts or omissions the insured is legally responsible." Mr. Menapace contends, and the district court agreed, that the term "legally responsible" extends the Hospital's lia-

---

**6.** In *Pfeifle*, we held that the liability for public hospitals and health care providers does not impose liability for the acts or omissions of non-employees of a governmental hospital unless the hospital or health care provider is providing service to a state institution or county jail. *Pfeifle*, ¶¶ 25-27, 317 P.3d at 579-80.

**7.** Wyo. Stat. Ann. § 1-39-111 was repealed in 1986. Laws 1986, ch. 89, § 3.

bility to the acts or omissions of any person for which any other hospital would be legally responsible, such as an apparent agent. The Hospital, on the other hand, contends that the term "legally responsible" is not an extension of the Hospital's liability at all and is a reference solely to the Hospital's liability under the WGCA. We agree with the Hospital.

[¶18] To determine the extent of the Hospital's coverage under the UMIA Policy, we must determine who qualifies as any person for whose acts or omissions the Hospital is "legally responsible."[8] This Court has interpreted the term "legally responsible" to be generally synonymous with the terms legally liable or legally obligated:

> "Liable" means "responsible." *Bostick v. Usry*, 221 Ga. 647, 146 S.E.2d 882 (1966); *Thorgaard Plumbing & Heating Co. v. County of King*, 71 Wash.2d 126, 426 P.2d 828 (1967); *Penn v. Commercial Union Fire Insurance Company of New York*, 233 Miss. 178, 101 So.2d 535 (1958); *Holmes v. Blue Bird Cab*, 227 N.C. 581, 43 S.E.2d 71 (1947).
>
> " * * * 'Liability' is defined by Black's Law Dictionary to be 'the state of being bound or obliged in law or justice to do, pay, or make good something; legal responsibility.' Webster defines it to be 'the state of being bound or obliged in law or justice; responsibility.' Bouvier defines it to be 'responsibility; the state of one who is bound in law and justice to do something which may be enforced by action.' * * * "
> *Benge's Adm'r v. Bowling*, 106 Ky. 575, 51 S.W. 151 (1899).

*Wyo. Bank and Trust Co. v. Waugh*, 606 P.2d 725, 730 (Wyo. 1980).[9]

[¶19] Paraphrased, then, the UMIA Policy covers claims against the Hospital for its acts or omissions, as the insured, and for the acts or omissions of any person for whose acts or omissions the Hospital is legally liable. Be-

cause the Hospital is a governmental entity, and its legal liability is defined and limited by the WGCA, we must conclude the use of the phrase "any person for whose acts or omissions" the Hospital "is legally responsible" in the UMIA Policy does no more than provide coverage for the Hospital's liability under the WGCA. The coverage is not an expansion of the Hospital's liability.

[¶20] The district court rejected this interpretation for a number of reasons. First, the court found the interpretation to be circular, stating that "[u]nder [this] interpretation, [the Hospital] is immune if there is no coverage and there is no coverage (the insurance exception does not apply) if [the Hospital] is immune (if it is not "legally responsible")." Second, the court found the interpretation "ignores the purpose of insurance under the [WGCA]: not only to cover risks for which the exceptions to immunity are provided under the [WGCA], but also to extend the governmental entity's liability." Third, the court reasoned:

> * * * The Hospital doesn't explain whose negligence, other than apparent agents, could be covered by the term "arising out of the performance of **medical professional services** rendered or which should have been rendered ... by any person [other than the insured] for whose acts or omissions the **insured** is legally responsible." This provision unambiguously provides a hospital coverage for the professional negligence of its apparent agents. The Hospital's interpretation would render it meaningless. [Emphasis in original.]

[¶21] We reject the district court's reasoning as contrary to the structure and terms of the WGCA. First, the court's view that there is a circularity in referring to the WGCA to determine whether the Hospital is "legally responsible" is based on an incorrect assumption that section 118(b)(i) is itself an exception to immunity or creates liability. The

---

8. Neither party contends that this term is ambiguous, and since the term is readily definable and not subject to varying meanings, we likewise find no ambiguity. *See North Fork Land & Cattle*, ¶ 14, 362 P.3d at 346 (quoting *Doctors' Co. v. Ins. Corp. of America*, 864 P.2d 1018 at 1023–24 (Wyo. 1993)) (ambiguity will be found only if

insurance policy language is capable of more than one reasonable interpretation).

9. The meaning we give the term "legally responsible" is not materially different from the parties' agreed upon dictionary definition of "liable to be called on to answer."

exceptions to immunity are the WGCA provisions that actually impose liability—sections 105 through 112. Section 118(b)(i) itself neither imposes liability nor creates an exception to immunity. It instead allows a governmental entity the choice to extend its liability. It follows that if an insurance policy covers claims for which a governmental entity has "legal responsibility," or "legal liability," that coverage is referencing the entity's existing liability as defined in the WGCA, or as expressly extended in the insurance policy.

[¶22] For similar reasons, we reject the district court's assertion that limiting coverage under the UMIA Policy to the Hospital's liability under the WGCA ignores section 118's purposes. The district court starts from a faulty premise by characterizing section 118 as having a dual purpose of providing coverage for liability under the WGCA and extending that liability. These purposes could be attributed to section 118 if it mandated coverage and mandated extended coverage, but it does not.

[¶23] Section 118(b) allows a governmental entity to purchase liability insurance to cover "all or any portion" of its liability under the WGCA, and Section 118(b)(i) allows a governmental entity to extend its liability to the extent of coverage. Both aspects of Section 118 are entirely permissive. A governmental entity may elect to purchase insurance or not, extend its liability or not. It thus does not run afoul of section 118 or its aims if a governmental entity purchases liability insurance that does not extend its liability or if an insurance policy is interpreted to cover only that liability found in WGCA sections 105 through 112.

[¶24] With respect to the district court's final observation, that our interpretation renders meaningless the coverage for "any person for whose acts or omissions" the Hospital "is legally responsible," we again disagree. This language may very well be a "belt and suspenders" approach to coverage, making allowance for the possibility that the WGCA may be amended or judicially interpreted to expand the Hospital's liability beyond the acts or omissions of its employees. Additionally, section 110(a) of the WGCA provides:

A governmental entity is liable for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of health care providers who are employees of the governmental entity, including contract physicians, physician assistants, nurses, optometrists and dentists who are providing a service for state institutions or county jails, while acting within the scope of their duties.

Wyo. Stat. Ann. § 1-39-110(a) (LexisNexis 2017).

[¶25] It is not inconceivable that the Hospital could provide services covered by this liability, such as services to a county jail. Were such services provided, the category of persons for whose acts or omissions the Hospital is legally responsible may in turn be enlarged. We understand the speculative nature of our observations, and we do not purport to state with any certainty what liability the "any person" coverage is intended to cover. Our point is only that the language is not rendered meaningless by declining to read the term "apparent agents" into the coverage for "any person whose acts or omissions the insured is legally responsible."

[¶26] In reaching this conclusion, we must again emphasize that a government entity's purchase of liability insurance is not an absolute or complete waiver of immunity. The purchase of insurance extends liability only to the extent of the insurance coverage. Wyo. Stat. Ann. § 1-39-118(b)(i) (LexisNexis 2017). With enactment of the WGCA, the Wyoming legislature clearly defined a governmental entity's legal liability, and if a governmental entity's insurance does no more than cover claims for which the entity is "legally liable," or "legally responsible," we are unwilling to read additional terms into that coverage to expand the entity's liability. The UMIA Policy could easily have used the terms "apparent agent" or "independent contractor," or both, in defining the Hospital's coverage. Instead, it provided coverage for "any person for whose acts or omissions" the Hospital "is legally responsible." Such language does not extend the Hospital's liability and instead does no more than cover the Hospital's existing liability under the WGCA.

[¶27] Finally, we note that our conclusion in this matter does not run afoul of the balance the Wyoming legislature sought to strike between protecting public resources and compensating persons injured by a governmental entity. See Wyo. Stat. Ann. § 1-39-102(a) (LexisNexis 2017). In *Pfeifle*, we observed:

> * * * [T]he legislature's decision to exclude most independent contractors from the definition of "public employees" under the WGCA is perfectly consistent with the purposes of the Act. In promulgating the Act, the legislature recognized the unfairness of precluding a plaintiff's claim against a governmental entity in situations where the government provides services "not available through private parties." Wyo. Stat. Ann. § 1–39–102 (LexisNexis 2013). When an independent contractor or private party provides the services that injure the plaintiff, however, the plaintiff can maintain a direct cause of action against that private party unconstrained by the doctrine of sovereign immunity. The inequities that prompted the legislature to enact the WGCA simply do not apply when the plaintiff has a claim she can bring against the party that actually provided the services.

*Pfeifle*, ¶ 26, 317 P.3d at 580. n.2.

### CONCLUSION

[¶28] The Hospital's liability insurance did not provide coverage for liability beyond the liability defined by the WGCA, and it therefore did not extend the Hospital's liability to include liability for its apparent agents. We therefore reverse the decision of the district court and remand for entry of an order granting the Hospital's motion for partial summary judgment.

DAVIS, Justice, specially concurring.

[¶29] I concur in the result reached by the majority on this record, but I have additional reasons for doing so. The insurance policy in this case, with all endorsements, encompasses 86 pages, and so there are many exclusions, definitions, limitations, and provisions of various kinds. This claim falls under Coverage A, "HEALTHCARE SYSTEM MEDICAL PROFESSIONAL LIABILITY." The general covering language, as set forth in the majority opinion, is as follows:

> UMIA agrees to pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as **damages** because of any **claim** or **claims** * * * arising out of the performance of **medical professional services** rendered or which should have been rendered * * * by the **insured** or by any person for whose acts or omissions the **insured** is legally responsible. [Emphasis in original to indicate defined policy terms.]

[¶30] I do not find this language, read in isolation, to be clear. Both parties' interpretations seem circular, and depart from the assumed absence or presence of coverage. However, I think the definition of the term "insured" provides clarity which breaks the impasse and makes resorting to rules of contract interpretation unnecessary. We read an insurance contract as a whole before deciding whether it is ambiguous. *Continental Western Ins. Co. v. Black*, 2015 WY 145, ¶ 18, 361 P.3d 841, 847(Wyo. 2015).

[¶31] On the declaration page of the policy, the "named insured" is, unsurprisingly, Memorial Hospital of Sweetwater County. The term "insured" is further defined in the policy:

"Insured" means the following:

(a) the **named insured**; [Emphasis in original.]

* * * *

(d) Each of the following is also an **insured**:

(1) hospital administrators, members of the Board of Governors, members of the Board of Directors, **employees** or volunteer workers, but only while acting within the scope of their duties.

However, coverage afforded for employees **does not apply to**:

(a) interns, externs, residents, and dental, osteopathic, chiropractic, podiatrist, or **medical doctors unless specifically endorsed onto this Policy.** [Emphasis added in subparagraph (d).]

(found in "Definitions" section (applicable to terms "[w]hen used in this Policy or Endorsements forming a part hereof")).

[¶32] I understand that this provision makes employees additional insureds—they would be covered if they were sued, even if the hospital was not. However, the policy clearly does not cover any medical doctor who is not endorsed, even if that physician is actually an employee.[10] This language necessarily negates coverage for those listed providers who might appear to be employees but who are not, perhaps even if they are listed on an endorsement, which is extremely unlikely to happen. The carrier has insulated itself from surprises with this clear provision requiring medical doctors and certain other care providers to be specifically identified so that it can measure the risks it insures against. The hospital did endorse a number of individual physicians and other listed care providers as insureds, but Dr. Miao was, of course, not among them.

[¶33] I believe the language clarifies that the policy does not cover medical doctors who are not employees, and then only those specifically endorsed. While this result would be unfortunate for a nongovernmental hospital under *Sharsmith v. Hill*, 764 P.2d 667, 671-72 (Wyo. 1988), in this case there is no waiver of Sweetwater County Memorial Hospital's immunity under the Wyoming Governmental Claims Act because the hospital has not purchased insurance coverage for ostensible agents who are medical doctors. Wyo. Stat. Ann. § 1-39-118(b)(i) (LexisNexis 2017); *Campbell County Mem'l Hosp. v. Pfeifle*,

2014 WY 3, ¶ 29, 317 P.3d 573, 580-81 (Wyo. 2014). I therefore agree with the result reached by the majority.[11][12]

10. There is an exception in a policy endorsement providing coverage for locum tenens physicians covering for employee physicians who are listed as required by the policy, provided that the locums physician and the employee physician do not provide professional services at the same time. This does not apply to Dr. Miao because he was covering for a hospitalist employed by EmCare, not the hospital.

11. In this case, we have only Appellant's statement in its reply brief that UMIA reserved its rights under the policy. However, Appellee has not argued that the policy provisions described above were in some way waived, and we have held that the coverage of an insurance policy may not be extended by waiver or estoppel. *Lewis Holding Co., Inc. v. Forsberg Engerman Co.*,

2014 WY 26, ¶¶ 13-14, 318 P.3d 822, 825-26 (Wyo. 2014) (citing *Sowers v. Iowa Home Mut. Cas. Ins. Co.*, 359 P.2d 488, 493 (Wyo. 1961); *Ricci v. New Hampshire Ins. Co.*, 721 P.2d 1081 (Wyo. 1986); *Tadday v. Nat'l Aviation Underwriters*, 660 P.2d 1148 (Wyo. 1983); *St. Paul Fire & Marine Ins. Co. v. Albany Cty. Sch. Dist. No. 1*, 763 P.2d 1255, 1261-62 (Wyo. 1988)).

12. I have some concerns about making decisions about insurance coverage in a case in which the carrier is not directly participating, although it did retain defense counsel for the hospital, who argue against coverage. However, in this case, the policy language as a whole seems to me to clearly eliminate coverage for the hospital's benefit for Dr. Miao's alleged errors, and so I am comfortable with reaching the merits.